## Jones *versus* Wood.

1. An article of agreement for the sale of land is merged in the deed made in pursuance of it, which is delivered and accepted.

2. Fraud will vitiate any contract. Where land is, by article of agreement, agreed to be sold by A. to W., and W. afterwards sells the same to J., *the deed to be made by A. to J.*, which is afterward made and delivered to J. in the presence of W.: in a suit by W. against J. for the value of a certain piece of land, alleged by W. to form a part of his original purchase, but which, by a subsequent deed, had been conveyed by A. to J. for an additional consideration, in order to affect J. with fraud in the transaction as between A. and J., it must be shown that J. participated in the fraud, or at least had knowledge of it. ♦

3. It is error for the court to submit to the jury for their deliberation an alleged fact of which there was no evidence.

4. Where the donee of a power to sell land possesses also an interest in the subject of the power, a conveyance by him made without actual reference to the power will not be deemed an execution of the power, unless there be evidence of an intention to execute it, or at least in the face of evidence, disproving such an intention; but where the donee has *no estate in the premises*, and his conveyance can be made operative *only* by treating it as an execution of the power to sell, it will be so considered.

5. Notes of the testimony of deceased witnesses taken on a former trial between the same parties and bearing directly on the same subject of dispute, viz: the boundaries and extent of a certain tract of land, are admissible in evidence in a suit for the value of a piece of land adjoining that the extent of which was in dispute in the first suit.

ERROR to the Common Pleas of *Chester county.*

This was an action of covenant by Thomas Wood against John Jones, to recover the alleged value of 25 acres and 128 perches of land, at $25 per acre.

The Rev. Robert Annan owned a tract of land, situate partly in Lancaster and partly in Chester county, known as the "Annan Farm," containing 412 acres and allowance.

He died in 1819, leaving a will, directing his real estate to be sold by his executor, and appointing Dr. Samuel Annan and another his executors, of whom Dr. Annan is the survivor.

This tract of land was held by two deeds, both from Colonel James Taylor to Robert Annan, one of them dated October 22, 1799, for 412 acres and allowance, and the other of the same date, conveying "about 28 acres, being lately surveyed, upon a warrant to the said James Taylor, dated the 18th day of October, A. D. 1785."

The first of these deeds only, ever came to the possession of Dr. Annan, the executor, or was ever within his knowledge.

Along with this deed was a plot or draft of the land, drawn with *black* lines, corresponding precisely with the courses and distances in the deed for 412 acres, and exhibiting within *dotted* lines, outside of the black lines, the land supposed to be vacant, and now said to be covered by the deed for 28 acres.

On the 9th of August 1838, Dr. Samuel Annan, surviving executor of Robert Annan, deceased, entered into contract with Thomas Wood to convey to him the Annan farm, containing 412 acres and allowance, for $10,000, seven thousand of which was to lie in the land, secured by bond and mortgage to Dr. Annan as surviving executor.

At the time of entering into this contract, Dr. Annan told Wood, that the part marked on the plot by *dotted* lines was supposed to be vacant, and he could take it up if he thought proper—showed him the deed for 412 acres—told him it was all he had to sell—and gave him the plot to take home with him and run the lines by.

On the 11th of August 1838, Wood entered into contract with Jones to convey to him the Annan farm, "containing somewhere about 412 acres," for $25 per acre, "$7000 to lie in the land six years, if desired by the purchaser, to be secured by bond and mortgage at legal interest annually, to be executed to Samuel Annan, executor of Robert Annan, deceased, *by whom the deed will be executed to said Jones.*"

In the latter part of 1838, Wood called on Moses Whitson to survey the Annan tract, and gave him the draft above referred to. Whitson surveyed it, Wood pointing out the lines, and including the supposed vacant land, making 475 acres 38 perches in all. Sometime after, he was informed by Wood or Jones that no warrant for the vacant land could be found, and was requested to run the lines, leaving it out. He did so, in Wood's presence, who pointed out the lines again, and, as was supposed by all, excluded the vacant land, but in fact crossed it, and included near 10 acres of it.

In an interview between Annan and Wood, the same autumn, Wood demanded that Annan should convey to him the whole land, including the supposed vacancy, and Annan refused to do so, saying he had never sold him any but the 412 acre tract.

The same autumn, Wood took legal advice as to his rights under the contract with Annan.

[Jones *v.* Wood.]

The deed from Dr. Annan, surviving executor, to Jones, was prepared by Whitson, embracing the 412 acres, and about 10 acres of the vacant land, pursuant to the last survey of Whitson, and on the 2d of April 1839, was executed and delivered by Dr. Annan to Jones, *in the presence of Wood, who signed as a subscribing witness.*

At the same time, Jones executed a mortgage to Dr. Annan for $7000, of the same premises, conveyed to him—paid him $3000, and paid Wood the balance of the purchase-money. Wood was a subscribing witness also to the mortgage.

After the last survey of Whitson, finding there was more vacant land outside thereof than had been supposed, Dr. Annan took out a warrant, dated 8th November 1838, and had it surveyed and returned to the land-office. There were surveyed on it 33 acres 116 perches.

On the 3d of April 1839, Dr. Annan, as an individual, and not as executor of his father, conveyed this land to *Jones* for $400, " being the same tract of land surveyed by virtue of a warrant for the same, bearing date the 8th day of November 1838."

This action was brought by Wood against Jones to recover the value of the land conveyed by deed of April 3, 1839, at $25 per acre, and was founded on the agreement of August 11, 1838.

It was brought to July term 1848, after the decision of this court that Jones had a good title to the ten acres of supposed vacant land included in the deed of April 2, 1839. Wood *v.* Jones, see 7 *Barr* 473.

PLAINTIFF'S EVIDENCE.—*Paper marked* X.—This article of agreement, made and concluded this 9th day of August 1838, between S. Annan of the one part, and J. Wood of the other, witnesseth that the said Annan has sold unto said Wood, all that tract of land, known as Annan's farm, bounded by lands of S. Steele, J. Wood, and others, on the following conditions, viz: The said Wood is to pay or cause to be paid unto the said Annan, the sum of three thousand dollars, on the first (of) April 1839, at which time he is to get possession, and the said Wood is to pay the further sum of $7000 at the end of six years, in lawful money— for which latter sum he is to pay at the end of each and every year the sum of $420, being legal interest, at six per cent. per annum, until the whole is paid. The latter sum of seven thousand dollars is to be secured on the property by bond and mortgage, which the said Wood binds himself to execute or cause to be executed, at the time of paying the first sum of three thousand dollars, at which time a deed, or full and sufficient title for the property, will be given by the said Annan—the farm is to be taken in a tract, be the same more or less—the lines to be run by the deeds and plot, and made out as nearly as possible, &c. * * * At the signing of the article of agreement, the sum of $100 is to be paid by the said Wood, which is to be deducted from the amount to be

[Jones *v.* Wood.]

paid the 1st of April 1839. Any variation of the lines, particularly along between the said farm and the land formerly owned by the Thompsons, the said Annan is not to be accounted for, &c.

Signed,                    SAMUEL ANNAN, [L. S.]
                           THOMAS WOOD,  [L. S.]

Receipt given for the above hundred dollars August 9, 1838, and signed by Samuel Annan.

Article of agreement made and concluded this 11th day (of) August, A. D. 1838, between Thomas Wood, of Steeleville, Chester county, State of Pennsylvania, and John Jones, of East Bradford township, county of Chester, and state aforesaid, as follows, viz: The said Thomas doth sell all that plantation or tract of land known as the Annan farm—situate part in the county of Lancaster, Sadsbury township, and State of Pennsylvania, and part in West Fallowfield, Chester county, of said state—bounded by lands of James Steele, Joshua Lamborn, James Ross, A. Rokestron, and said Wood's other lands, and others—containing somewhere about four hundred and twelve acres, be the same more or less. For which said Jones agrees to pay the said Wood the sum of $25 per acre—the land to be surveyed at said Jones's expense —and the usual allowance of six per cent. to be made in payments as follows: five hundred dollars, part thereof, on the execution of this article—seven thousand dollars to lay in the land six years, if desired by the purchaser, to be secured by bond and mortgage at legal interest annually, to Samuel Annan, executor of Robert Annan, deceased, by whom the deed will be executed to said Jones—and possession given on the 1st day of April 1839, at which time the said Jones is to pay the balance, be the same more or less—to be paid to said Wood, who is herein bound to procure said deed and possession at the time above mentioned from said Annan. In witness whereof, said parties set their hands and seals the day and year above written.

                           THOS. WOOD,   [L. S.]
                           JOHN JONES,   [L. S.]

Deed from Samuel Annan, M. D., surviving executor of Robert Annan, deceased, to John Jones, dated April 2, 1839, duly acknowledged and recorded—consideration $10,000—reciting a deed from Colonel James Taylor to Robert Annan, for two tracts, containing together 449 acres 70 perches, in Sadsbury township, Lancaster county, and West Fallowfield, Chester county.

*Thomas Wood, the plaintiff below, is a subscribing witness to this deed.*

Deed from Samuel Annan, M. D., to John Jones, dated April 3, 1839, consideration $400, for 25 acres 128 perches, in West

[Jones *v.* Wood.]

Fallowfield, Chester county, bounded by lands of Joshua Wood, Abraham Rakestraw, and John Jones, being the same tract surveyed by virtue of a warrant, dated November 9, 1838.

Warrant to James Taylor, dated October 18, 1785, for 25 acres of land, partly in Sadsbury township, Lancaster county, and partly in West Fallowfield township, Chester county, adjoining his other land.

Receipt of receiver general, dated October 18, 1785, for £2 10s. paid by James Taylor, for said 25 acres.

Deed from James Taylor to Rev. Robert Annan, dated October 20, 1799, for about 28 acres in West Fallowfield, Chester county, lately surveyed on a warrant to James Taylor, dated October 18, 1785.

The plaintiff then proved by John Robb, Abraham Rakestraw, and Joshua Wood, that during the lifetime of Rev. Robert Annan, and after his death, eight or ten acres, part of the vacant land, had been enclosed and occupied with the Annan farm—that Dr. Samuel Annan was in Edinburgh at his father's death—was educated there, and was very seldom at the farm, and that they knew of no vacant land at that place.

The plaintiff's counsel then offered to read in evidence the notes of the testimony given by Moses Criswell and Andrew Thompson, on the trial of the case of Jones *v.* Wood, at February term 1847, the witnesses being since dead.

Defendant's counsel objected to its admission, on the ground that the controversy between the parties in that case was different from the present, and related to other land.

The court overruled the objection, admitted the evidence, and defendant's counsel excepted.

Those witnesses proved that the said field, part of the vacant land, had been farmed with the Annan farm, before and after the death of Robert Annan, and that timber was cut by Robert Annan on the vacant land outside of the field; and that they knew of no vacant land there.

The plaintiff here closed his case.

The defendant then read in evidence the deposition of Dr. Annan, taken in September 1849, on commission.

He testified, *inter alia*, that he was the executor of the will of his father.

I did, on the 9th of August, 1838, enter into a contract with Thomas Wood for the purchase and sale of a tract of land. The original contract between myself and Wood is now in Baltimore, Md. I herewith annex and refer to a printed copy (marked X) and make it a part of this my deposition, which said printed copy is a true one to the best of my knowledge and belief. I sold to Wood a tract of land containing 412 acres, with the allowance of

six per cent. The printed copy (marked X) will describe the land I sold to Wood. The original contract was in writing. I had a conversation with Wood, preparatory to the completion of the contract, which conversation was in Baltimore, Md., and I then told him that the tract contained 412 acres, with the allowance, and I showed him a plot or draft of a survey, which I believe now to be the one marked A, which was the one, and the only one, I delivered to Wood, August 9, 1838, to run the lines by, which was produced to me on my examination before arbitrators, in the case of Jones *v.* Wood, at West Chester, Pa., March 19, 1846, the courses and distances of the black lines on which corresponded with those of the deed from James Taylor to Robert Annan, dated October 22, 1799, under which the latter held the Annan farm. And I also told him that the part marked on the plot by dotted lines, outside of the black lines, on the Chester county side of the farm, was vacant land, which I had not thought it worth while to take up, but he (Wood) might take it up if he thought proper—that the 412 acres and allowances were all I had to sell. I showed him the deed, and told him the deed was made from the plot or draft I gave him. I also informed him that there had been an altercation between Thompson and my father about one of the lines, and that if I accepted of his offer of $10,000, he must make out the lines as nearly as he could by the plot, but that if he would give me $25 an acre I would be responsible for the lines.

I gave him the plot to take home to run the lines by, and told him expressly that the lines must be run by it; and I also told him that he must do the best he could with the lines marked on the plot, which I also gave him. The tract was sold to him for 412 acres, that he must take it at that with allowance, be the same more or less. Wood lived near the tract. The vacant land was never known as a part of the Annan farm; it was always known as vacant land.

By the request of Wood, I made the deed to Jones on April 2d or 3d, 1839, and received from Jones $3000 in cash, and took his bond secured by mortgage for $7000, payable at the end of six years, with interest to be paid annually.

In the autumn of 1838, I took out a warrant for 40 acres of vacant land, and had it laid on by the deputy county surveyor, adjoining the land which I had sold to Wood and conveyed to Jones, under which warrant I sold the piece of vacant land as surveyed, to Jones, in the beginning of April 1839, for $400, and made the deed to him for it.

Thomas Wood was fully aware of my taking up said vacant land, and selling and conveying it to Jones. He was aware of it in April 1839, because I refused to convey it in the deed of the large tract, and I supposed, at the time I executed the deed, that it did not include any part of the vacant land. * * * I suppose he must

[Jones *v.* Wood.]

have been aware of it in the fall of 1838. * * * I told Wood if he would give me $25 an acre, I would make out the lines by the 412 acre survey as nearly as possible, and would charge for no more than I could make a title for. * * * The dispute between my father and Thompson about one of the lines, which dispute, I believe, involved a part of the 412 acre survey, was the chief reason why I made the offer I did to Wood. I also thought that there possibly might be a difficulty with the Loves and Tweeds, and my intention was rather to give up small strips than go to law. * * * On the Chester county side is a road; a field is cut off running east and west; that field was farmed by my father. * * * That field must have had in it a portion of the vacant land. I did not know, when I lived with my father, that any portion of that field was vacant land, nor did I learn it at any time prior to the sale. * * * I know of no such deed from Colonel James Taylor to the Rev. Robert Annan, dated October 22, 1799, for 28 acres, and do not believe there ever was such a valid deed, because there never was a warrant or survey upon which to base it. There was but the one deed from Colonel Taylor for the 412 acres. * * * I don't think any part of the vacant land was enclosed, except so far as this field goes, (the field before spoken of.) * * * I did not know that my brothers had cut timber off the vacant land; neither did I know the vacant land ran down into the field, till Whitson surveyed it for Wood. * * * I lived on the farm (Annan's) about a couple of years. It was about 1814 or 1815. I went to Europe in 1817. * * * My father owned and lived on the farm at that time. * * * I handed the title-papers of the Annan farm over to Jones. There was no deed among them from Colonel James Taylor to the Rev. Robert Annan, for 28 acres, dated October 22, 1799. * * * There was but one deed from Colonel James Taylor to my father, among the papers of my father, for parts or the whole of the Annan farm, and there were not two deeds.

The defendant then proved the loss of the plot (marked A) referred to by Dr. Annan.

Moses Whitson was examined on the part of defendant, and proved that he was called on in the latter part of 1838, he thought by Wood, to survey the Annan tract, and that he surveyed it. That he made inquiry for the Annan papers, the old deeds, but was informed by Wood that he was not in possession of them. That all the draft he had was the draft marked A. That it was suggested by Wood and others, that certain land belonged to the Annan tract, but that he, witness, informed them that there were no courses and distances set forth in the plot to include the land in the survey. However, we ran round in accordance with the adjoining landmarks, and included within our survey all the land suggested as the Annan tract. That he included the vacant land, and made the quantity 475 acres 38 perches. That he was again called

[Jones *v.* Wood.]

on by Wood, to run the line or lines between the vacant land and the other, according to the old draft. * * * The contents of what was thought to be *vacant land* were 25 acres 3 roods and 8 perches. We ran that much out of the survey of the whole we had previously made. He afterwards said the draft was a draft of the 412 acres and allowance, and that draft was enclosed by black lines, with the exception of the part spoken of as *vacant*—that was enclosed by dotted lines. The black lines had courses and distances, the dotted lines had not. Thomas Wood remarked that the whole included in the dotted lines had been considered the Annan tract. The black lines of themselves, formed a plot—closed. The dotted lines were outside of it. * * * We found no marks on the ground on the dotted line, except the difference in the growth of the timber, &c.

Hagerty testified, *inter alia*, "that Wood contended that he had bought all that tract known as the Annan farm, and that the vacant land had been used as a part of the Annan farm, and he claimed it on that ground. In 1838 or 9, Wood demanded it—Annan refused to convey it. That Annan thought it had overrun too much, and he did not want to be speculated upon. After the deed from Annan to Jones, Wood told me he had witnessed the deed. He said he was in the squire's office, and they asked him to witness it, and he did not see how he could get out of doing so, and he didn't know what effect it would have, whether it would bar him from recovering or not."

Defendant's counsel gave in evidence a mortgage from John Jones to Dr. Samuel Annan, executor of the will of Robert Annan, deceased, dated April 2, 1839, for $7000, on 449 acres 70 perches of land, being the same premises that day conveyed by Dr. Samuel Annan, surviving executor, &c., to John Jones. *To this mortgage Thomas Wood, the plaintiff, was a subscribing witness*—the said mortgage being given for a part of the purchase-money mentioned in the article of agreement of August 9, 1838.

Also, a warrant to Dr. Samuel Annan, dated Nov. 8, 1838, for 40 acres of land, in West Fallowfield, Chester county, and a survey in pursuance thereof, of 33 acres. 116 perches and allowance, being the same warrant recited in the deed from Dr. Samuel Annan to John Jones, dated April 3, 1839.

Also, the deed from Colonel James Taylor to Robert Annan, dated October 22, 1799, for 412 acres and allowance, being the deed recited in the deed from Dr. Samuel Annan, surviving executor, &c., to John Jones, dated April 2, 1839.

The defendant here closed his case.

Defendant requested the court to charge the jury as follows:

1. The deed of April 3, 1839, from Dr. Samuel Annan to John Jones, is not an execution of the power in the will of the Rev. Robert Annan, authorizing his executors to sell his real estate.

[Jones *v.* Wood.]

2. The deed of April 2, 1839, from Dr. Samuel Annan, surviving executor of the Rev. Robert Annan, to John Jones, closed all questions as to the quantity of land agreed to be sold by the agreement of August 9, 1838, between Dr. Samuel Annan and Thomas Wood, and also as to the amount of purchase-money, and the plaintiff cannot recover on the article of agreement.

3. The plaintiff, having been present when the deed of April 2, 1839, from Annan, as executor, to Jones, was executed, having witnessed that deed, and the mortgage for the $7000, which, according to the article of August 9, 1838, was to be given upon the premises covenanted to be conveyed by that article, not objecting to the deed and mortgage, and receiving the purchase-money, acquiesced in the conveyance as a completion of the contract, and cannot recover.

*Charge of the court.*—This is an action of covenant, brought by Thomas Wood, against John Jones, to recover about $600, with interest, the alleged price of 25 acres 128 perches of land. The action is brought on an article of agreement, under seal, executed by these parties on the 11th of August, 1838.

It is contended by the plaintiff, that he has complied with his covenants—that he has caused to be made to the defendant a deed by Dr. Annan for the "Annan farm," agreeably to the article, and although he has received a part of the consideration, there remains due him the price of 25 acres and 128 perches. Has the plaintiff established this position? It is not disputed but that the plaintiff complied with his covenant so far as relates to the tract of 449 acres 70 perches, but this does not embrace the whole "Annan farm." It seems that the Rev. Robert Annan acquired title to about 412 acres with allowance, in the year 1799, by deed from James Taylor. Another deed was also made to him by Taylor, of the same date, for a piece of 28 acres, for which Taylor had a warrant of the 28th of October 1785, which was stated in the deed to have been surveyed, but not returned, and which bounded on the larger tract. This latter tract has ever since been considered a part of the "Annan farm." It was enclosed, occupied, and farmed by Robert Annan, up to his death, in 1819, and has been treated as such to the time of the sale.

It is very clear the deed for 449 acres 70 perches did not convey it, and therefore the defendant alleges the plaintiff has no right to recover. Did the case stop here, his allegation would undoubtedly be correct. This brings us to the contract between Annan and Wood. The article of agreement stipulates that Annan was to convey the "Annan farm"—the lines to be run by the plot and deeds—"the farm to be taken in a tract, be the same more or less"—consideration, $10,000. By this agreement, Wood was entitled to have a deed for the whole "Annan farm." Notwithstanding the deeds and plot are referred to, still the general description

will prevail. Besides, the deed for the smaller tract ought not to be excluded from the reference. It appears by the evidence, that on the 3d of April 1839, Dr. Annan executed a deed to Jones for the 25 acre tract—omitting to name himself as executor. He had procured a warrant for 40 acres, which included the 25 acres, and had the same surveyed. The plaintiff contends this conveyance was an execution of the power conferred upon Annan by his father's will, and Jones having thus obtained title to the whole " Annan farm," he is liable to the plaintiff for the balance of the consideration, as stated in the article of agreement. To this the defendant replies that the deed of April 2, 1839, from Dr. Annan, executor of his father, to John Jones, closed all questions as to the quantity of the land agreed to be sold by the agreement of August 9, 1838, between Annan and Wood, and also as to the amount of purchase money, and that the deed of April 3, 1839, from Annan to Jones, is not an execution of the power in said will. Two questions are thus presented for solution. Did the deed of April 2, 1839, close all questions as to the quantity of land and amount of purchase-money ? If such was its effect, there can be no recovery in this suit. It is a well-established rule of law, that as between vendor and vendee by the acceptance of a deed or payment of purchase-money, the article is merged, and the parties are precluded from alleging a deficiency of land or claim for a surplus. The execution of a conveyance is the consummation of the article, unless there be fraud or deceit; mutual misapprehension is not enough. The inquiry is merely this : *Was Wood deceived or defrauded ?* It is contended that he was—that Dr. Annan had a right, and was bound by the article to convey the " Annan farm ;" that he suppressed from Wood's knowledge material facts in relation to the title, and that his object was to secure to himself a private advantage out of his father's estate. *If you are satisfied there was fraud or deception practised by Annan upon Wood,* the deed of the 2d of April 1839 is not in the latter's way. But still, if there was a reasonable ground for doubt as to the title to the 25 acres, and that doubt was honestly entertained, there was nothing improper or fraudulent in excluding this tract from the conveyance. If Wood was not deceived by Annan, he cannot complain. If you shall decide he was not, your verdict must be for the defendant. If you come to a contrary conclusion, then the question arises whether the deed of April 3, 1839, was an execution of the power in the will of Dr. Annan. Has Jones obtained a title to the " Annan farm," or in other words, has the article of agreement between him and Wood been complied with by Wood ? Certain rules are laid down in law which are to govern in a question such as this.

1. When there is a reference to the power, it will be deemed to be executed.

[Jones *v.* Wood.]

By this deed, 3d of April 1839, there is no reference to the power—reference is made to the warrant obtained in 1838.

2. Where there is a reference to the property.

Here the attempt was to convey, and there was a conveyance of the identical property.

3. When the instrument would have no operation excepting as an execution of the power.

Under the two last rules, the power may be deemed to have been executed.

But it is urged there was no intention to execute the power, and that the intention must govern. The intention to execute the power need not be expressed in the instrument; it will be inferred when the property itself is the subject-matter of conveyance, or where it would be void unless it be by virtue of the power. It is said by defendant's counsel, Dr. Annan did not know the tract belonged to his father's estate. He had sufficient evidence of the fact in his possession, and, under the circumstances, making to Jones the deed he did, he could not gainsay it, nor disturb Jones in his possession. The latter was put in the same position as if the whole 475 acres had been originally conveyed to him by Dr. Annan, as executor of his father's will. I therefore charge you that the deed of the 3d of April 1839, was an execution of the power under the will, and the plaintiff is entitled to recover, provided you are satisfied Wood was deceived or defrauded, as before stated.

The defendant's point (quoting first point) is answered in the general charge, to which answer, as well as that part of the charge where it is said, "Was Wood deceived or defrauded?"—if you are satisfied there was fraud or deception practised by Annan upon Wood, the deed of the 2d of April 1839 is not in the latter's way.

The defendant's counsel excepted to the charge of the court, and to their answers to the points submitted, or so much thereof as relates to the deed of April 3, 1839, being an execution of the power; and in referring it to the jury, to say whether fraud or deceit were practised on Wood at the time of the execution of the deed of April 2, 1839.

Verdict was rendered for the plaintiff.

Specifications of error:

1. The court erred in admitting the testimony mentioned in the first bill of exceptions.

2. They erred in their answer to the defendant's first point.

3. They erred in saying in their charge, "Was Wood deceived or defrauded?" If "you are satisfied there was fraud or deception practised by Annan upon Wood, the deed of the 2d of April 1839 is not in the latter's way."

4. They erred in referring it to the jury to say whether fraud

or deception were practised by Annan on Wood at the time of the execution of the deed of April 2, 1839, there being no evidence whatever of any such fraud or deception.

*J. Hickman* and *W. Darlington*, for plaintiff in error.

1. First error.—The evidence offered was notes of testimony taken on a former trial between the same parties, but about the price of another piece of land. The question then was as to the title to a part of the land conveyed by the deed of April 2, 1839. The present contest is about the price of other land. The same *subject-matter* is not in dispute.

2. The deed of April 3, 1839, was not an execution of the power contained in the will of Robert Annan.

The deed does not refer to the *will* nor to the *estate* held under it. It refers to the *warrant of* 1838.

Where a party has a *power*, and also an *interest*, the *intention* is the great object of inquiry : 4 *Kent's Com.* 335–6.

Here Dr. Annan had an *interest* as well as a *power*.

The intent must be so clear that no other reasonable intent can be imputed : 4 *Kent* 335.

The intent here is to convey the title he obtained by the warrant of 1838. It is clearly expressed in the deed.

If the words of the will (power by will) may be satisfied without supposing an intention to execute the power, then unless the intent to execute be clearly expressed, it is no execution of it : *Id.* 335.

If a man disposes of that over which he has a power *in such a manner that it is impossible to impute to him any other intention* but that of executing the power, the act done shall be an execution of the power : Andrews *v.* Emmot, 2 *B. C. R.* 303.

This is always a question of intention, whether the party meant to execute the power or not: Sir W. GRANT, Bennet *v.* Abunow, 8 *Ves.* 616.

The intention may be collected from circumstances, as that a part of the will would be inoperative unless applied to the power : *Id.* 616.

In Doe *v.* Roake, 2 *Bing.* 497, all the authorities are reviewed by Chief Justice BEST, and the case ruled on the authority of Andrews *v.* Emmot, 2 *B. C. R.* 303.

The *intention* to execute the power must be *apparent* and *clear*, so that the transaction is not fairly susceptible of any other interpretation : Judge STORY, in Blaggs *v.* Miles, 1 *Story's Rep.* 426, 446, cited in 1 *Russ. & Myl.* 525, (n.)

*Intention*, in these cases, governs. When it can be inferred that the power was not meant to be exercised, the court cannot consider it as executed : 1 *Sugden on Powers* 440. Same principle, Hay *v.* Mayer, 8 *Watts* 208–9. Allison *v.* Kurtz, 2 *Watts* 185.

No intention to execute the power can here be found. But on

the contrary a denial of the power, and a clear intent to convey as an individual, what he supposed he owned as such.

3 and 4. The judge laid down the law correctly, that the deed closes all questions as to quantity of land and purchase money in the articles, unless there be fraud or deceit; but he left it to the jury to infer fraud or deceit, without any evidence. This was erroneous. It is presumed he meant fraud or deception at the execution of the deed of April 2, 1839. We may search in vain for any evidence of it. The deed was drawn by Whitson, pursuant to a survey made under Wood's direction; it was executed by Annan to Jones, under the article between Wood and Jones of August 11, 1838, and in the presence of Wood, who signed it as a witness; the $3000 were paid to Annan in Wood's presence; the mortgage for $7000 was executed by Jones to Annan for the same property, and Wood signed as a witness, and not a word of dissatisfaction is heard. Wood settled with Haggerty for his share of the profits, and all was supposed to be at an end. Jones could have no idea but that all was closed. He then purchased of Annan the 25 acres, and paid him for it. *Nine years* elapsed, and Wood sued Jones, alleging he was deceived. But was Wood, at any time, deceived by Annan? Annan did not agree to convey the vacant land. He refused to convey it. Wood demanded that he should, and advised with counsel. It was an open question between Annan and Wood, whether Annan could be compelled to convey or not. Wood might have refused to accept the deed of Annan for any part of it, unless the whole were conveyed. But he chose to go on and complete the business upon Annan's terms, leaving out the vacant land. This he did with his eyes open. The deed of April 2, 1839, the payment of the money, and the mortgage closed all questions upon the articles. The defendant was entitled to an explicit direction to the jury to that effect.

The deed closes all questions as to the quantity of land and purchase-money in the articles: Cronister *v.* Cronister, *W. & Ser.* 443; Smith *v.* Evans, 6 *Bin.* 102; Baily *v.* Snyder, 13 *Ser. & R.* 162; Creigh *v.* Beelin, 1 *W. & Ser.* 83; Shurtz *v.* Thomas, 8 *Barr* 363; 10 *Watts* 427.

In this case the deed was accepted without a release of dower.

The purchaser took the title, which he consented to take in satisfaction: 8 *Barr* 364.

The acceptance of the deed of April 2, 1839, by Jones, from Annan, having been in pursuance of the article of August 11, 1838, between Wood and Jones, and in Wood's presence, he not objecting, it was as if accepted by Wood—Jones merely standing in his shoes.

But even if Annan ought to have conveyed the whole to Jones, and refused, and Wood allowed the business to be so completed, how can Jones be affected by Annan's conduct so as to make him

D

[Jones *v.* Wood.]

liable to Wood? There is no evidence of fraud in Jones. If Wood has any claim, it should be upon Annan for refusing to convey on the 2d of April 1839. There is not a tittle of evidence of any fraud on Jones's part at any time, nor on the part of Annan on the 2d of April 1839. Yet the judge says *if fraud or deception was practised by Annan on Wood*, the deed of the 2d of April 1839 is not in the latter's way. *This was leaving a question to the jury without any evidence whatever, and was error.*

*Lewis*, for defendant in error.—As to the first point taken by the plaintiff in error, the evidence of the deceased witnesses related to precisely the same question—and this would have been shown if the testimony had been exhibited by the paper-book. The paper-book of the former cause shows that the testimony then produced, as now, was to prove what constituted the Annan farm. On the first point the following cases were referred to : Hobart *v.* M'Coy, 3 *Barr* 419 ; Cooper *v.* Smith, 8 *Watts* 536 ; Ottinger *v.* Ottinger, 18 *Ser. & R.* 142.

If in a dispute respecting lands, any fact comes directly in issue, the testimony given to that fact is admissible to prove the same point or fact in another action between the same parties or their privies, though the last suit be for other lands : *Greenleaf on Evidence*, sec. 164 ; Foster *v.* Derby, 28 *Eng. C. L.* 213.

2. The deed of the 3d of April 1839 was an execution of the power.

Powers executed by deed or will need not recite or refer to the instrument creating the power, if the act done be such as cannot take effect but by virtue of the power. Hence, a conveyance by one who was executor, with full power to sell and convey, shall be construed to be an execution of the power contained in the will, although that power be not recited : Alison *v.* Kurtz, 2 *Watts* 185.

In Alison *v.* Kurtz the subject was fully considered, and the court below founded their charge on the doctrine of that case. See also Miller *v.* Meetch, 8 *Barr* 418.

It was the duty of Annan to convey the whole Annan farm : Wood *v.* Jones, 7 *Barr* 480.

The opinion of the court was delivered April 21, by

BELL, J.—It is conceded the court below was right in the instruction given, that acceptance of the deed of April 2, 1839, executed by Annan to Jones, was a consummation of the prior agreement, and operated to put an end to all questions concerning the quantity of the land to be conveyed, and the purchase-money to be paid, which might otherwise arise under the covenants of August 11, 1838. As a general rule, by such acceptance the parties to the transaction are absolutely precluded from looking behind the conveyance for subjects of strife, suggested by their pre-

[Jones *v.* Wood.]

vious negotiations and contracts; for the last step is esteemed as
indisputably expressive of their final conclusions.   In the present
instance, this well-settled doctrine is as applicable to Wood, the
vendor to Jones, as to the latter and his immediate grantor, Annan.
The evidence is uncontradicted that the former was present and
participated in the conveyance, as a discharge of his agreement
with Jones to cause a deed to be executed by Annan for the pre-
mises before purchased.  He was, undoubtedly, acquainted with
its description of the tract to be granted, for he had caused the
survey to be made by which that description was ascertained.  He
was, too, present at its execution and delivery, attesting it, as a
subscribing witness, without, so far as appears, a word of complaint
or remonstrance; though before that, he had unsuccessfully de-
manded from Annan a conveyance of the whole tract, including
what has been called the vacant land.  Under these circumstances,
he was properly regarded, on the trial, as an actual party to the
instrument, and subject to all the rules incident to that relation.

This view of his legal position must have precluded his recovery
in this action, had not the court permitted him the choice of claim-
ing the benefit of an exception to the rule which otherwise con-
cluded him.   The learned president correctly informed the jury
that the practice of a fraud or any deceit by a vendor, misleading
a purchaser, would absolve the latter from the conclusive effect of
the conveyance, and open the door for inquiry under the original
agreement.   To this instruction no exception can be taken.   As
an abstract proposition, it is unquestionable.   But the court went
a step further, by referring to the triers of fact, as a legitimate
subject for discussion and decision, whether Wood had been de-
frauded by the deceitful practices of Annan, or by concealment of
material facts in relation to the title which the vendor was bound
to disclose, but failed to do so in the hope of securing a private
benefit to himself?   "If," said the judge, "you are satisfied there
was fraud or deception practised by Annan upon Wood, the deed
of the 2d of April 1839 is not in the latter's way."  This certainly
was a most material inquiry, were there any proof upon which to
found it.   But we have looked in vain through the record, for evi-
dence tending to fasten upon Annan the practice of a fraud.   A
recurrence to every lawyer's experience of the facility with which
a jury is but too apt to yield itself to a reiterated suggestion of
falsehood and malpractice, especially where an innocent party has
suffered loss, though from his own neglect, strongly illustrates the
value of our legal maxim, that fraud is not to be presumed, but
must be proved.   Was there any, the slightest, proof of it here?
The insinuated fraud is said to consist in the undue concealment
by Annan, of the extent of what was known as the Annan farm,
and, by wilful misrepresentation, inducing Wood to accept a less
quantity of land than by the terms of his purchase he was entitled

to. To determine whether this was so, we must look to the evidence of Annan's knowledge on this subject. The first fact which presents itself in this connection is that, at the time of the sale, he was not a resident on the farm, and had not been since boyhood, many years before; much of the intermediate period having been spent abroad. When first called on by Wood, and before the purchase, he expressly declared the tract contained but 412 acres, and he now swears—his statement standing wholly uncontradicted— that he knew of no muniment connected with the title of the estate, save the deed of 1799, from Colonel Taylor to his father, for 412 acres and allowance, and the draft (marked A) by which the land, the subject of that deed, was correctly delineated by black lines, laid down by course and distance, and exhibiting that portion of the tract he had always understood was vacant land, as enclosed by dotted lines, unmarked by course or distance, in such a way as to lead to the conclusion it formed no part of the conveyed land; that he never had possession of the second deed made by Taylor, and knew not of its existence; that when Wood first proposed to purchase, he distinctly informed him the extent of the tract he had to sell was included within the black lines of the draft, which was furnished to the buyer as a means of ascertaining the boundaries, at the same time telling him that the piece of land exhibited as enclosed within dotted lines was vacant, and he (Wood) might, if he saw proper, take it up; that he (Annan) disclaimed any title to it, and refused to bind himself to convey any exact number of acres, or to be responsible for the correctness of the apparent lines of the tract, but put upon Wood the duty of ascertaining them, from the *data* then furnished. This Wood undertook to effect, and accordingly actually caused new surveys to be made by an artist of his own selection; in the first of which he included the estimated 28 acres as part of the farm, but afterwards caused the greater portion of it to be left out of the second survey, under the conviction that his original impression was erroneous. The deed was prepared in accordance with this second survey; but before its execution Wood, for some reason, seems to have recurred to his first impression, and, therefore, insisted that Annan should convey both parcels of land. The latter refused, because, as he said, he owned the title of the original tract alone, and finally, after the lapse of months, the deed as prepared was executed and accepted with Wood's full assent; nay, by his procurement. Before the conveyance, however, Annan, acting upon what he swears was his conviction, procured a warrant for what he supposed was vacant land, and, after causing it to be surveyed, sold and conveyed it, as his own, to Jones, the day next succeeding his grant of the first tract. I have thus given a detail of the leading features of this transaction. They furnish, to our apprehension, no evidence, however inconsiderable, that from the beginning to the end of it, Dr.

Annan knew or suspected his deceased father had been the owner of the so-called vacant land; or that he practised any art, or used any device to blindfold Wood, or to prevent him from attaining to the truth. As evidence of practised deceit, our attention was called to the language of the original agreement between Annan and Wood, in which it is stipulated that the lines of the tract are to be run "by the *deeds* and plot;" to the answer returned by Annan to one of the plaintiff's cross-interrogatories, in which he is made to say he had *a deed* for the 28 acres; and to the fact that, after his sale to Wood, he procured a new warrant, under which he set up a title to the land mistaken as vacant. But these portions of the evidence, candidly treated, furnish no ground upon which to erect an hypothesis of actual fraud. As to the answer to the cross-interrogatory, it, beyond question, was made to assume an affirmative instead of a negative shape, by the blunder of the commissioner in using the article "a," instead of the word "no." In answer to the very next question, which asserts the existence of such a deed, and inquires of the witness's knowledge regarding it, he flatly denies all cognizance of it, and reiterates that he never had such a deed. Besides, the admission of such a document is in direct contradiction of all he had said before and says after. As to the fact of a new warrant, it is sufficient to observe that so far from evidencing knowledge of a previous warrant and survey constituting the title conveyed to his father, it indicates a belief that no such title had existence; or, at the very least, it proves nothing relating to the disputed point. We are thus reduced to the forced inference of knowledge, to be deduced from the use of the plural "*deeds*," in the article of agreement. But, surely, no sane man, looking with unprejudiced eyes, can conjure from this word the monster fraud charged upon the seller. If the jurors did found themselves upon ground so utterly insufficient to sustain a structure so weighty, it but proves the accuracy of the remark I made in the outset. Looking at the whole of the proofs dispassionately, we have failed to discover any thing which can properly give birth to even a suspicion of deceit and falsehood practised by Annan; and we are almost forced upon the conclusion that the verdict pronounced is to be ascribed to the simple fact that Annan received money which ought to have gone into Wood's purse. But, though it may be conceded that such a consideration would naturally operate with men unversed in, and therefore unimpressed by the force of merely professional reasoning, it affords no apology we can recognise as sufficient for the conclusion arrived at.

I have, hitherto, considered this contest as though it were an action between Wood and Annan. But, still more unfavourably for the plaintiff, it is an effort to compel Jones to pay a second time for a portion of his land. To compass this, proof of the grossest fraud, practised by Annan on Wood, would be ineffica-

[Jones *v.* Wood.]

cious. It would be necessary to go farther, by showing Jones's participation in, or, at least, knowledge of the imputed iniquity. This necessity seems to have been overlooked at the trial. The attention of the jury was confined to the averred malpractices of Annan. When the argument was first broached in this court, the existence of proof involving Jones was not hinted. Indeed, such a suggestion must, necessarily, fail of success. From the beginning, Wood seems to have been the active agent in perfecting the arrangements ending in the conveyance. Jones, for aught that appears, was the passive recipient of the title Wood and Annan caused to be prepared for him. It is not intimated he knew of or had reason to suspect the existence of Taylor's second conveyance, or that there was any thing to lead him to doubt the truth of Annan's assertions, except the demand made by Wood, afterwards at least tacitly abandoned. And had there been, mere doubt is insufficient to entail upon him a consequence which can flow only from actual fraud. He appears to have relied, as he had a right to do, upon Wood's undertaking to procure for him a sufficient conveyance of the "Annan farm." Wood recognised this as the obligation he had assumed, and was, therefore, active in settling the terms of that conveyance. Jones received it at his hands, and afterwards took from Annan a transfer of the remaining land. In all this, we cannot perceive the slightest shadow of blame, legal or moral, attaching upon the defendant. So clear is this, that, I repeat, no accusation of impropriety in him seems to have been indulged below, nor was it here, until a suggestion of its necessity drove the ingenious counsel, who argued for the defendant in error, upon an endeavour to point to proof of it. In this, however, he wholly failed.

It follows from what I have said, there is in that part of the charge under review, faults of commission and omission. Of commission, in putting the jury at liberty to find an asserted fact, without proof of it. Of omission, in, inadvertently, neglecting to point out to them that fraud practised or participated by Jones, is indispensable to the plaintiff's success in this action. For these errors the judgment must be reversed, and the cause remitted for another trial.

But the other objection to the charge is untenable. Under the authority of Allison *v.* Kurtz, 2 *Watts* 185, and the doctrine there recognised, repeated in Miller *v.* Meetch, 8 *Bin.* 418, the deed of April 3, 1839, from Annan to Jones, may be accepted as a competent execution of the power to sell, conferred by the will of the Rev. Mr. Annan. The distinction settled by the decisions seems to be this: When the donee of a power to sell land possesses, also, an interest in the subject of the power, a conveyance by him, without actual reference to the power, will not be deemed an execution of it, except there be evidence of an intention to execute it, or, at

[Jones *v.* Wood.]

least, in the face of evidence, disproving such an intention; but where the donee has no estate in the premises, and his conveyance can only be made operative by treating it as an exertion of the power to sell, it will be so considered.   It is upon this ground the authorities are to be reconciled, and, among them, our own cases of Allison *v.* Kurtz, and Hay *v.* Mayer, 8 *Watts* 208, particularly referred to on the argument.   The principle stated embraces the conveyance in question, and justifies the opinion expressed by the court upon this point.   Were it, however, erroneous, it would inflict no injury on the defendant, since, doubtless, the grantor, and those claiming the benefit of the sale, would not be permitted to question the validity of that conveyance, as a means of transferring the title of the testator.   This remark is, of course, based upon the supposed acquiescence of the parties interested under the will, by participating in the avails of the sale.

The exception to the evidence received is unfounded.   The former statements of the deceased witnesses were made on the trial of an action between the same parties, and bear directly upon the same subject of dispute, namely, the boundaries and extent of the tract known as the " Annan farm."   This was a point of inquiry in both instances, material to the issue involved, and, therefore, opening to the parties plenary opportunity of interrogating the witnesses, in chief and by cross-examination.   The question of the competency of the evidence consequently falls directly within the rule settled by our own cases, cited on the argument, and stated by Mr. Greenleaf, with his accustomed accuracy, in his work on evidence.   (*Green. on Ev.* sec. 164.)

Judgment reversed and a *venire de novo* awarded.