# Hupp v. Union Coal & Coke Co.

*Wills—Conversion—Power of sale—Execution of power—Accelerating date—Intent—Presumption—Deed by executor's widow and devisees—Remaindermen.*

1. A direction by will to sell real estate is a power conferred by the testator on a donee; it is not an estate in the property, and its scope and intent is governed by the will.

2. Whether the power has been executed, is a matter of the donee's intention, and may appear by express terms, recitals or necessary implication.

3. The intention to execute the power must be so clearly manifested in the act of execution that it is impossible to impute any other, and the intention should appear in the instrument.

4. Such intent is not to be presumed from the mere grant of a larger estate, though that circumstance coupled with others will be sufficient upon which to base a presumption of its exercise; nor should a positive legal presumption judicially arise on equivocal or uncertain conditions of facts.

5. Where a power of sale is executed by deed without reference to the power, it is effective as such if it would otherwise be a nullity.

6. A conveyance by an executor with power to sell is construed to be an execution of the power contained in the will, although the power is not recited.

7. Where a power of sale is complete in the executors, but its exercise is postponed for the benefit of the widow until her death, the joinder of the widow and the life tenant with the executors, is a complete execution of the power, as in such case the joinder of the widow accelerated the date of the execution of the power.

8. Where testator gives land to his wife for life with remainder to his seven children, except that the share of a daughter shall be for life with remainder to her children, and directs the executors who were two of his sons, to sell the land, a deed of the underlying coal executed by the widow and all seven of the children, including the executors, but without the children of the daughter being represented, will carry a fee in six-sevenths coal, as a valid exercise of the power, and this is the case although no reference was made in the deed to the power.

Argued October 5, 1925.   Appeal, No. 121, March T., 1925, by Bethlehem Cuba Iron Mines Co., assignee of de-

fendant, from judgment of C. P. Greene Co., June T., 1922, No. 350, on verdict for plaintiff, in case of Aaron Hupp v. Union Coal & Coke Co.  Before FRAZER, WALL-ING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Reversed.

Ejectment for Pittsburgh vein of coal underlying land in Morgan Township.  Before RAY, P. J.

The opinion of the Supreme Court states the facts.

Directed verdict for plaintiff on which judgment was entered.  Bethlehem Cuba Iron Mines Co., assignee of defendant, appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*William J. Kyle,* with him *Patrick D. Reinhart,* for appellant.—The deed from the widow and children of William H. Bennett to Hiram Rankin and wife conveyed a good title to six-sevenths of the coal and mining rights.

When a will works a conversion there must be some overt act on the part of the beneficiaries to work a reconversion, but it has been held that their joining in a deed, or even in an oil and gas lease, for the land will work a reconversion: Beal v. Stehley, 21 Pa. 376; Brandon v. McKinney, 233 Pa. 481; McClarren's Est., 238 Pa. 220; Lincoln v. Wakefield, 237 Pa. 97.

The reconversion by the six children did not interfere with any right of Martha Craig or her children.

When there is an election to reconvert, the beneficiary is a purchaser, in law as well as in technical fiction, and takes a new and independent title as a purchaser.  He is not a devisee of the title to the land under the will, but is considered a purchaser of such title from the person having the power of sale: Handley's Est., 253 Pa. 119; Simpson v. Kelso, 8 Watts 247; Laird's App., 85 Pa. 339; Miller v. Com., 111 Pa. 321.

If the judgment of the lower court be permitted to stand, then the title to one-seventh of this coal is taken away from the children of Martha Craig and given to appellee who paid only $52.60 per acre for the farm in 1918 and who admitted that he did not buy the coal. The appellee is trying to make use of the fiction of equitable conversion, not to carry out the will of the testator but to defeat it: Yerkes v. Yerkes, 200 Pa. 419; Painter v. Painter, 220 Pa. 82; Johnson v. Kite, 26 Pa. C. C. R. 391.

The coal and mining rights were excluded from the executors' sale: Keidel v. R. R., 281 Pa. 289; Wiles v. Emerson, Brantingham Co., 267 Pa. 47; Keck v. Ry., 271 Pa. 479.

*Arthur B. Van Buskirk,* with him *Wm. A. Seifert* and *Reed, Smith, Shaw & McClay,* for Union Trust Co. et al. of Pittsburgh, cited: Gast v. Porter, 13 Pa. 532; Irvine v. Sibbetts, 26 Pa. 477; Hamlin v. Thomas, 126 Pa. 20; Knapp v. Nissley, 254 Pa. 379; Disston's Est., 257 Pa. 537; Bennett's Est., 270 Pa. 397; Handley v. Barrett, 176 Pa. 246.

*Walter C. Montgomery* and *Challen W. Waychoff,* with them *Roy J. Waychoff,* for appellee.—The will worked an absolute direction to sell, irrespective of contingencies, and independent of all discretion. It therefore works a clear and immediate conversion of his farm into personalty, effective at testator's death: Allison v. Wilson, 13 S. & R. 330; Neeley v. Grantham, 58 Pa. 433; Erwin's Est., 56 Pa. 405; Parkinson's App., 32 Pa. 455; Dalrymple's Est., 215 Pa. 367; Jones v. Caldwell, 97 Pa. 42; Sears v. Scranton Trust Co., 228 Pa. 126.

A reconversion cannot be effected without the unanimous joinder of all persons beneficially interested in the fund or property and then only in case all such persons are sui juris: Smith v. Starr, 3 Wharton 62; Henderson

v. Henderson, 133 Pa. 399; Willing v. Peters, 7 Pa. 287;
Evans' App., 63 Pa. 183; Handley's Est., 253 Pa. 119.

The deed to Hiram Rankin and wife, dated October 5,
1899, was an equitable assignment, if indeed it were
not an actual assignment, of the personal interests of
the grantors in the premises therein described. Under
the will of William H. Bennett, the grantors were legatees
merely of a share of the proceeds of the land. The will
did not exhibit any title whatever in them. These grant-
ors did not comprise all the persons beneficially inter-
ested; and the Rankins succeeded only to such rights as
the grantors then had: Erwin's Est., 56 Pa. 405; Mellon
v. Reed, 123 Pa. 1.

With full knowledge of all these facts, Hiram Ran-
kin was immediately bound thereby; and the will of
William H. Bennett, an important link in the chain of
title, being matter of public record, he and all his suc-
cessors in title are put upon inquiry as to the condition
of the title: Mellon v. Reed, 123 Pa. 1; McClure's App.,
72 Pa. 414; Brolasky v. Gally, 51 Pa. 509.

OPINION BY MR. JUSTICE KEPHART, November 23, 1925:

William H. Bennett died testate in 1897 seised of a
farm underlaid with the Pittsburgh vein of coal, con-
taining 94 acres. He left to survive him a widow and
seven children one of whom was named Martha. The
farm was devised to his widow for life and it was di-
rected that at her death it "shall be sold by my execu-
tors......and the proceeds" disposed of as follows:
$100 to a grandson, "and the residue" divided into seven
equal shares,—one share to each of six named children,
and the seventh, Martha's share, was to "be invested in
real estate by my executors herein named which real
estate she shall have use for her benefit and that of her
family during her natural life, and at her death it shall
belong to her children share and share alike." Martha
had a child living at the time of her father's death, and
two others have since been born to her. The testator's

two sons, John and Demas, who also were devisees, were appointed executors.

In 1899 the widow and seven children, including of course the two mentioned as executors, joined in a general warranty deed conveying the vein of coal under the farm, together with certain mining rights, to Hiram Rankin and wife. Since this conveyance, the coal has passed through many hands and today is worth from $300 to $400 an acre.

The widow died in 1917, and the executors then twice advertised the farm for sale. The first advertisement read: "Excepting and reserving" the vein of coal sold to Rankin. The second one, and the deed, contained this clause, "subject to the rights of Hiram Rankin and wife ......to the......vein of coal as sold and conveyed by ......Bennett......" Appellee purchased the farm for $52.60 per acre and claimed that the Pittsburgh vein of coal above mentioned, as well as the surface, was included. He instituted ejectment for the coal, appellant having been in possession of it since 1899. The court below directed a verdict in plaintiff's favor which was permitted to stand, and judgment was entered thereon.

Clearly the merits of the case are with the appellant, who for 23 years had been in the possession of property for which a valuable consideration was paid. During all this time there has been no protest or complaint from any one.

Many interesting questions are presented; but the case turns on these two: (1) Was the joinder of the two executors as heirs with the widow and other heirs in the conveyance of the property an execution of the power of sale? (2) If not, was the power well executed in the second sale as it related to the Pittsburgh seam of coal?

A power is an authority given to dispose of real or personal property of which the donor has the right of disposition. It is not an estate in the property, and its scope and extent is governed by the instrument creating it. A direction by will, to sell real estate, is a power

conferred by a testator on a donee, in the present case, the executors.

Whether the power has been executed, is a matter of the donee's intention; that is the true test. It may appear by express terms, recitals or necessary implication. It was early held that the intention to execute the power must be so clearly manifested in the act of execution that it is impossible to impute any other (Andrews v. Emmot, 2 Bro. C. C. 297, 29 Repr. 162; Doe D. Nowell v. Roake, 2 Bing. 497, 130 Repr. 398, reversed, 5 B. & C. 721, 108 Repr. 268, which was affirmed 6 Bing. 475, 130 Repr. 1364), and this intention should appear in the instrument: Bingham's App., 64 Pa. 345, 349. A classification was then made whereby the intention to execute was said to be clearly manifested: (1) By a reference to the power in the executing instrument. (2) By a reference to the property on which the power was to operate. (3) Where the instrument of execution would have no operation except as an execution of the power: Wetherill v. Wetherill, 18 Pa. 265, 271; Bingham's App., supra, 349. Such intent is not to be presumed from the mere grant of a larger estate, though that circumstance, coupled with others, will be sufficient upon which to base a presumption of its exercise: nor should positive legal presumptions judicially arise on equivocal or uncertain conditions of fact: Bingham's App., supra. In Scott v. Bryan, 194 Pa. 41, 45, where the question was as to the execution of power of sale, the appointee having a life estate, Justice MITCHELL said: "The general rule in determining the validity of the execution of powers is that the intention of the donee to execute is the turning point. Such intent will not be presumed from the mere grant of a larger estate than the grantor possessed but it may be gathered from such grant coupled with other evidence......The grantor in the deed had no estate which she could convey, and therefore her deed could not be made operative except as an execution of the power. Under all the cases this is conclusive evidence of her

intent to exercise the power: Wetherill v. Wetherill, 18 Pa. 265; Bingham's App., 64 Pa. 349."

Where a power of sale is executed by deed without reference to the power, it is effective as such if it would otherwise be a nullity; for example, in Lancaster v. Dolan, 1 Rawle 231, 248, the power was to appoint and the donee gave a mortgage without reference to the power. Of similar import are Coryell v. Dunton, 7 Pa. 530; Keefer v. Schwartz, 47 Pa. 503. In Allison v. Kurtz, 2 Watts 185, it was stated that powers executed by deed or will need not refer to the instrument creating the power if the act done cannot take effect but by virtue of the power. A conveyance by an executor with power to sell is construed to be an execution of the power contained in the will, although that power is not recited. The law, which mainly regards the design and object of the parties, will not suppose them to do a vain and useless thing; but, if there be any other way in which their design can take effect, it shall be deemed to operate in that way.

In Jones v. Wood, 16 Pa. 25, which was the case of a donee of a power to sell land possessing also an interest in the subject of the power, it was said, p. 42, "A conveyance by him (the donee), without actual reference to the power, will not be deemed an execution of it, except there be evidence of an intention to execute it, or, at least, in the face of evidence, disproving such an intention; but where the donee has no estate in the premises, and his conveyance can only be made operative by treating it as an exertion of the power to sell, it will be so considered."

It was stated in McCreary v. Bomberger, 151 Pa. 323, 328: "We need not discuss her interest in the real estate, for, conceding it to be but a life interest, it by no means follows that the mortgage did not bind the remainder. It will be noticed the will gave her an absolute power of sale subject to the provision that the proceeds are to be reinvested in or secured by other real estate......The

fact that she sealed the mortgage personally and not as executrix will not prevent its execution being referred to the power of sale, if that is necessary to carry out the intent of the parties."

Such being the law governing the ascertainment of the intent of the parties as to the execution of powers, it remains to apply it to the case at hand. In this case we have an estate that is concededly converted (Davidson v. Bright, 267 Pa. 580), where the beneficiaries have merely an estate in personalty. They executed a deed in fee simple of general warranty, undeniably attempting to sell real estate; not their right or interest but the specific thing, with mining rights that ordinarily could be no part of anything but a freehold, such as ventilation, drainage, opening shafts, and an option to buy the surface at $100 an acre. The executors as individuals had no such estate they could convey and therefore the deed could not operate except as an execution of the power given by the will. The executors as such or as individuals certainly intended to convey a fee. That other heirs joined might have been a wise precaution; the joinder should not defeat the intent clearly manifested by the deed. After this conveyance, the power to sell was similarly exercised in a deed for a right-of-way to the Philadelphia company. This may not have been the formal way to do it but it was an effective way.

The executors, when later exercising the authority to sell the farm, recognized the first sale as an execution of the power. In the proceedings and the deeds, by the exception, reservation and "subject" clauses noted above, they did all that was possible to confirm their prior acts, not as individuals but as executors under the will. Such evidence of intention, though in some instances crudely expressed from the standpoint of legal theory, should not now be disturbed. Certainly, after 23 years, when the property has grown immensely in value, in the hands of others, with no objection from any

source up to this time, we should hesitate to condemn the act.

That the sale was not to be made until the widow's death is immaterial. As stated by Mr. Justice MITCHELL in Hamlin v. Thomas, 126 Pa. 20, 29: "Powers must be strictly pursued, and a power to be exercised upon a given event cannot be properly executed before the happening of that event. But the exception is equally well settled that where the power is complete, but its exercise is postponed for the benefit of a particular person, the consent of that person will be equivalent to the happening of the stipulated contingency." See also Knapp v. Nissley, 254 Pa. 379, 383. The joinder of the widow in the deed accelerated the date of execution of the power. The life estate was created solely for the benefit of testator's widow, not his children.

If the execution of the first deed was not referable to the power contained in the will, then, because of the advertisements and the second deed to appellee, the power as it related to the Pittsburgh seam of coal was not only not well executed but not executed at all. If powers must be strictly pursued and the instrument must contain inherent proof of its exercise, so much so that it is impossible to impute any other (Wetherill v. Wetherill, 18 Pa. 265, 272), what can be said of a deed by the executors, made pursuant to such power, wherein is contained an express declaration that they did not intend to execute the power with respect to a sale of the coal? This in effect is what the reservation, exception and "subject" clause means. Even if we are in error as to our first conclusion, then the second deed did not include the land in dispute.

Nothing above said affects, in any way, the estate of the children of Martha. Appellant has repeatedly stated, in the course of this litigation, that the rights of these children were not acquired through the conveyance to Hiram Rankin and his wife. Probably, for that reason, the children were not heard below or here, and certainly,

because thereof, their rights are not determined by us. That concession has, therefore, become the law of the case, and the estate of these children remains unconverted, exactly as it existed immediately after the death of William H. Bennett.

Judgment is reversed without prejudice to the rights of Martha's children,—costs to be paid by the appellee.