## Handy Trust

*Henry I. Koplin,* for accountant.

BOLGER, J., March 16, 1956.—This trust arose under a deed of trust dated August 2, 1917, a copy of which is annexed.

The settlor gave certain assets to the accountant (therein designated Philadelphia Trust Company) in trust to pay the net income one-third each to Caroline

T. C. Handy, his wife, B. H. Handy and Edward S. Handy, 3rd, his sons, and upon the death of his wife to pay all of the income to his sons for life, and at the death of either son to pay one-half of the principal as the said son may direct by his last will and testament.

Caroline T. C. Handy died at Syracuse, N. Y., June 29, 1944.

Bryan H. Handy died July 25, 1955, and letters testamentary have been granted in his estate to First Trust and Deposit Company at Syracuse, N. Y.

The trust is terminated as to one-half.

On October 15, 1951, Bryan H. Handy executed a partial release of his general power of appointment, a copy of which release is annexed. In this release, decedent states that he will not exercise the power of appointment in favor of himself, his estate, his creditors and the creditors of his estate.

In his will, a copy of which is annexed, said Bryan H. Handy does not specifically exercise the power of appointment, but by the sixth and seventh paragraphs makes a general gift of his entire residuary estate as follows: ". . . to my executor hereinafter named, in trust, however, to be taken and held by it during the lives of my said brother and his said wife (with respect to one-third)"; the income to be expended for the benefit of his brother and his sister-in-law and the survivor of them, and upon the death of the survivor to pay the principal among first cousins designated in the will.

He also gave the balance of his residuary estate in the same fashion "to my executor hereinafter named, in trust . . ." for the benefit of his eight cousins for life and upon the death of each to pay the principal to distributee or distributees of the cousin who might die.

At the audit there was submitted proof of notice to all parties in interest of a possible question to be pre-

sented as follows: Did the execution of the partial release change the general power of appointment to a limited power and if so, did the failure to specifically exercise the limited power of appointment prohibit the application of the Wills Act of April 24, 1947, sec. 14(14)? A further question has been presented, viz., Did the gift of residue "to my executor . . . in trust" constitute a blending?

It is stated that the donor of the power was domiciled in New York at the time that he executed the deed of trust. Therefore, the exercise and the interpretation of the power must be governed by the laws of the state of his domicile: Barton Trust, 348 Pa. 279; A. L. I. Restatement of the Law of Conflict of Laws §285; Windolph Trust, 374 Pa. 81.

It would appear that the New York case law is similar to our Wills Act, supra, to the extent that a general disposition of a residuary estate is tantamount to a valid exercise of a general power of-appointment: In re: Brown's Will, 6 N. Y. S. 2d 836; In re Rosenman's Will, 106 N. Y. S. 2d 115.

Research of counsel and of the auditing judge has failed to show a case exactly in point.

It is well recognized that the release signed by the donee of the power was filed to comply with the provisions of the Federal tax law and was filed under the authority of the Estates Act of April 24, 1947, P. L. 100 20 PS §301.3, or its predecessor, the Act of 1943, P. L. 797, as amended by the Act of 1945, P. L. 1337.

The release is not a covenant, but even though it were a covenant and even though consideration had been given for it, there could be no diminution of the authority which was and continues to be the act of the donor of the power. Once the deed of trust became effective, the power of appointment conferred therein became indestructible.

In Farwell on Powers, page 19, the case Re Evered (1910) 2 Ch. 147, p. 157, is cited for the proposition that a covenant to appoint by will in a particular way cannot be the subject of specific performance or have any legal operation and that a release by the donee of the power or covenant by him not to exercise the power is not open to objection even though the effect of the release is for his benefit.

"A power is an authority given to dispose of real or personal property of which the donor has the right of disposition. It is not an estate in the property, and its scope and extent is governed by the instrument creating it": Hupp v. Union Coal & Coke Co., 284 Pa. 529.

The only way in which the power of appointment granted in the present deed of trust could be validly exercised is by will. The limitation which resulted from the release could in no way affect or change the inherent quality of the power and make it a special or limited power of appointment requiring its exercise to be in a special or limited manner. The Act of 1947, supra, recognizes the quality of a general power above referred to. Section 301.3 (b) reads, in part, as follows:

"No release or disclaimer of a power or of an interest shall be deemed to make imperative a power or interest which was not imperative prior to such release or disclaimer unless the instrument of release or disclaimer expressly so provides."

The auditing judge finds that in accordance with the law of New York, the estate of the settlor has been validly appointed by the will of his son, B. H. Handy.

The gift of the residuary estate to "my executor hereinafter named in trust" cannot be considered a blending of the estate. A blending must be clearly intended and the intention must be demonstrated within the four corners of the will of the donee of the

power. Had he used the word "trustee", it might have more clearly expressed his intention that his residuary estate and the appointed estate were to be held in trust. It is clear that he did not intend to designate his executor in an administrative fashion, but merely to identify him as the one selected to exercise the trust. It is obvious that from the very nature of the release the testator did not intend the property of this donor to be blended with his general estate . . .

And now, March 16, 1956, the account is confirmed nisi.