HOWARD et al. v. DILLARD.

No. 31448. Jan. 14, 1947.

*176 P. 2d 500.*

Geo. N. Otey, of Ardmore, Harley Ivy, of Waurika, and R. Rhys Evans, of Ardmore, for plaintiffs in error.

Wm. G. Davisson, of Ardmore, for defendants in error.

ARNOLD, J. This action was commenced by Vida Dillard in her personal capacity and as executrix of the estate of Josiah Hamilton Dillard, deceased, to have the court construe and determine the effect of a certain deed executed by the deceased on the 6th day of May, 1922; the defendants in the action are Wilton Howard, Walter H. Gant, Kermit Dillard, Lee H. Dillard, Mamie Grimes, nee Dillard, Douglas Dillard, Guy Dillard, Minnie Franklin, formerly Minnie Moore, nee Dillard, Joe Dillard, Vella Saunders, nee Dillard, Cub Dillard, V. E. Dillard, and C. D. Williams; except for Howard, Gant, and Williams, the other defendants are all children of the deceased.

Plaintiffs filed their original petition and amended petition. It was alleged that plaintiff was the executrix and the residuary legatee of J. H. Dillard, deceased; that J. H. Dillard during his lifetime was the owner of certain real estate, and that on the 6th day of May, 1922, he made a deed to the defendants or their predecessors in interest conveying to them an undivided one-eighth interest in and to all of the oil, petroleum, gas, coal, asphalt, and all other minerals of every kind or character in, on, and under the lands involved. A copy of said deed was attached to the petition. Plaintiffs alleged the effect of said deed was to reserve to the grantor and his successors seven-eighths of the royalties that might accrue to the entire mineral estate. It was averred that a construction of said deed was necessary and that the court should construe the

same as a grant to defendants of not a full one-eighth royalty but rather a grant of one-eighth of an undetermined royalty of all the minerals accruing to or that might be produced from said land.

Defendants answered alleging that the deed referred to granted to them a fixed one-eighth royalty of all minerals in or under and that might be produced from said lands, and they prayed that the court should construe said deed and quiet title thereto.

The evidence in the case was by stipulation of the parties and is undisputed. Trial was to the court on the issues joined as above indicated and resulted in a judgment in favor of plaintiffs sustaining their construction of the deed, and defendants appeal. The pertinent parts of the journal entry of judgment are as follows:

"It is ordered, Adjudged and Decreed by the Court that on its findings aforesaid the aforesaid instrument should be and is hereby construed by this court and the rights of the parties are fixed thereunder as follows, to wit:

"1. That subject to the reservations hereinafter mentioned, said grant conveyed to the grantees, Kermit Dillard, Lee H. Dillard, Mamie Grimes, nee Dillard, Vella Saunders, nee Dillard, Douglas Dillard, Guy Dillard, Minnie Moore, nee Dillard (Now Minnie Franklin), Joe Dillard and Cub Dillard, their heirs and assigns, an undivided one-eighth interest in and to all oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character, in, on and under the land therein described.

"2. That said conveyance left an undivided seven-eighths interest in and to all such oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character on, in and under said land, vested in the said J. H. Dillard, and his devisees and assigns.

"3. That said instrument further reserved in the said J. H. Dillard, his devisees and assigns, the sole, absolute and exclusive right of management and control of the minerals granted, and the

sole and exclusive right to lease said lands for the purpose of developing said minerals, to any person whom he or they might choose, and upon such terms and conditions as he or they might choose.

"4. That such conveyance also reserved to the grantor, his devisees and assigns all rentals and delay moneys which might be or become payable under any lease given on said premises by him or them.

"5. That the continued ownership by J. H. Dillard, his devisees and assigns of seven-eighths of the oil, petroleum, gas, coal, asphalt and all other minerals of every kind, on, in and under said land, carries with it the right to receive seven-eighths of all royalties accruing from any lease made or to be made thereon by the said J. H. Dillard, his devisees and assigns.

"6. That subject to the reserved rights aforesaid, the conveyance of the one-eighth mineral interest mentioned in the first numbered paragraph of this judgment to the grantees named in said instrument and their assigns, carries with it the right to an undivided one-eighth interest in all royalties which may accrue from any lease made or to be made thereon by the said J. H. Dillard, his devisees and assigns; but that said grantees, their heirs and assigns, have no right, power or authority to themselves lease said premises, nor any right to any share of the rentals or delay moneys which may accrue from the leasing of the said premises by the said J. H. Dillard, his devisees or assigns."

Omitting the specific descriptions of the lands covered, the deed involved in this action reads as follows:

### "Sale of Royalty

"This Indenture, made this the 6th day of May 1922, between J. H. Dillard of Carter County, Oklahoma, party of the first part, and Kermit Dillard, Lee H. Dillard, Mamie Grimes nee Dillard, Douglas Dillard, Guy Dillard, Minnie Moore nee Dillard, Joe Dillard, Vella Saunders nee Dillard and Cub Dillard, of Carter County, State of Oklahoma, parties of the second part, witnesseth:

"That the party of the first part, in consideration of the sum of $1.00 and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell and convey unto the said parties of the second part, their heirs and assigns, an undivided one-eighth interest in and to all the oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character in, on and under, and that may be produced from the following described lands situated in Jefferson County, State of Oklahoma, to wit: (Here follows description of some 4,000 acres of land.)

"It is expressly understood and agreed, however, that this conveyance is made, executed and delivered with the express understanding and agreement that the party of the first part shall retain management and control of the minerals and privileges hereinbefore mentioned, and that he shall have the sole and exclusive right to lease said lands to any person to whom he may choose and upon such terms and conditions suitable to him, and should the party of the first part so desire, he shall have the sole and exclusive right for the purpose of mining and operating for oil and gas and laying pipe lines and building tanks, power stations and structures thereon to produce, save and take care of said products on said described premises under the usual provisions as provided in regular 88 form of oil and gas lease.

"It is further expressly understood and agreed that one of the conditions upon which this conveyance is made and delivered is that in the event that said land shall be leased by the party of the first part to other parties, all rentals and delay moneys shall be payable to him; it being the intention of the parties hereto that the parties of the second part shall only be entitled to and shall only receive one-eighth royalty of all oil and gas which may be produced and saved from the above described premises, whether by the party of the first part, his executors or assigns, and that they shall have no voice whatever in the leasing and letting of said lands for such purposes, as aforesaid.

"To have and to hold the above described property, together with all and singular the rights and appurtenances

thereunto belonging, to the said Kermit Dillard, Lee H. Dillard, Mamie Grimes, nee Dillard, Douglas Dillard, Guy Dillard, Minnie Moore, nee Dillard, Joe Dillard, Vella Saunders, nee Dillard, and Cub Dillard, their heirs and assigns forever.

"J. H. Dillard."

In their petition in error defendants have assigned six grounds of error, but in their brief the six assignments are argued under one proposition as follows:

"The instrument designated a 'Sale of Royalty' conveyed to the grantees therein a full one-eighth of all of the oil, gas, and other minerals in and under or that might be produced from the lands involved, to be held as a royalty."

It is the contention of the defendants that when the granting clause is construed with the provisions of the foregoing paragraphs of the deed the combined royalty interest of plaintiffs and defendants must be determined to be one-eighth of all minerals produced. It is not contended that the granting clause, standing alone, could be so construed.

Under paragraphs 3 and 4 of the deed the grantor reserved unto himself the right to lease the lands involved on such terms as should be suitable to him and also the sole and exclusive right to develop for oil and gas and carry on other mining operations. These personal rights and privileges constitute rights in trust none of which were exercised by the grantor before his death and no trust relationship, coupled with an interest, came into existence. These reserved rights or privileges came to an end under the circumstances at the death of the grantor. See 41 Am. Jur. p. 878, sec. 100, and cases there cited in Note 6. These powers in trust did not run with the land.

The situation might be otherwise if the grantor had, during his lifetime, leased or begun oil and gas exploration.

This all being true, the foregoing rights reserved by the grantor to himself personally were not inheritable or assignable and did not descend to his representative or heirs.

In view of this interpretation it is obvious that the granting clause of the conveyance stands alone unaffected by the language used by the grantor in connection with the reserved powers mentioned. Thus, standing alone, the granting clause is clear and unambiguous and subject, as all agree under such circumstances, to only one interpretation, that is, that thereby the grantor conveyed to the grantee a one-eighth undivided interest in the minerals of the land in this case.

The judgment of the trial court correctly interprets the granting clause, holding that an undivided one-eighth interest in all oil, petroleum, gas, coal, asphalt and other minerals in and under said land was vested in the grantees named in the deed, and correctly holds that an undivided seven-eighths interest in said minerals is vested in the devisees and assigns of J. H. Dillard. In all other respects the judgment of the trial court must be and is reversed, with directions to enter judgment in conformity with the views herein expressed.

DAVISON, V. C. J., and OSBORN, BAYLESS, WELCH, and GIBSON, JJ., concur. HURST, C. J., dissents.

---

HURST, C. J. (dissenting). The majority holds that the two paragraphs between the description and the habendum clause were intended to be effective only during the lifetime of the grantor and that since his death they cannot be looked to for any purpose. No such contention is made by the parties. Both the plaintiff and defendants contend that these clauses are still in force, but they disagree as to their effect. The plaintiff contends that, under these clauses, she as executrix and residuary legatee has the exclusive right to manage and control the leasing and development of the lands covered by the conveyance, including the right to de-

termine the royalties to be paid and the right to fix and retain all bonus and delay rental moneys, and that the defendants are tenants in common with her in the ownership of the mineral interests with her, they owning one-eighth and she seven-eighths. The defendants contend that, under the conveyance, they own a full royalty interest of one-eighth of the minerals produced.

The case was tried entirely on an agreed statement of facts, which is silent on the question of the understanding of the grantor and grantees as to the meaning and effect of the conveyance, their relationship to each other, the circumstances under which it was made, any practical construction the parties may have placed upon it, their subsequent dealings, if any, with reference to the lands, or whether minerals are now being produced from any of the lands. However, we do know, from what was said in Re Dillard's Estate, 148 Okla. 168, 298 P. 558, that about the time this deed was made divorce proceedings were pending between Dillard and his first wife, and that when he died some five years later he was still a very wealthy man, and he could not have been married to the plaintiff as much as five years prior to his death. Presumably, the grantees were the only children of grantor living at the time the conveyance was made.

The record and briefs are silent on the question of what precipitated the filing of this action. We are not advised as to whether the disagreement pertains to the leasing privileges, the right to operate for the minerals covered by the deed, or a division of the minerals. In effect, we are asked to give an advisory opinion construing the conveyance without knowing what the real controversy is. The case could well be remanded with directions to develop the facts that would aid us in construing the instrument. But, since it is to be decided upon the record before us, I think the case is of sufficient importance to justify a statement of the rea-

sons why I dissent to the majority opinion.

1. Were the two paragraphs following the description intended by the grantor to be effective only during his lifetime, as held in the majority opinion? I think not.

There is no word or statement in them that indicates such intention. In fact, the statement in the second of the two paragraphs that the grantees were to receive only a one-eighth royalty whether produced "by the party of the first part, his *executors or assigns*" clearly shows the contrary to be true. His executor could have no authority as such until after his death. The word "assigns" is one of broad meaning, and includes those who succeed to the rights of the owner or holder of the right by devise and descent as well as by formal assignment. 4 Am. Jur. 230; 5 C. J. 1310; 6 C.J.S. 1035; Black's Law Dictionary (3d Ed.) p. 156.

The absence of the words "executors, devisees and heirs" following the name of the grantor in the two clauses does not indicate an intention that the rights reserved should not inure to the benefit of his executor, devisees and heirs. The rule of the common law that to create a fee-simple estate or an estate of inheritance in the grantee it was necessary for the conveyance to mention the devisees or heirs of the grantee has been abrogated in this state by 16 O.S. 1941 §29. See 19 Am. Jur. 479; 26 C.J.S. 398. And under such statutes it is not necessary that in an exception or reservation the grantor mention his devisees or heirs for the estate reserved to descend to his devisees or heirs. See 16 Am. Jur. 613; 26 C.J.S. 445, note 66.

The one authority cited in the majority opinion for the holding that the power to lease and control reserved by the grantor expired with his death does not support the conclusion. That citation deals with the death of the donor of a power. Here Dillard was not the donor of a power but retained unto himself a power, incident to the estate

retained by him. The power retained was to operate the property himself or to lease it and retain all bonuses and delay rentals, and all royalties over and above the royalties that were conveyed to the grantees. He simply conveyed a nonparticipating royalty interest in the oil and gas. Summers Oil & Gas, Perm. Ed., §581; Myers v. Hines, 149 Okla. 232, 300 P. 309. We must remember that the question of the amount of royalty to be paid is one of contract, and is variable. While it is generally one-eighth of the oil and gas, yet we know that among the Osage Indians it is one-sixth and the state receives a royalty of one-fourth from the oil produced from the Capitol grounds.

Therefore, it is my view that the two clauses are still effective for all purposes and inure to the benefit of, and are binding upon, the plaintiff as executrix and residuary devisee under the will of grantor as well as the grantees and their assigns.

2. Did the grantor intend to convey to his children, the grantees, a royalty interest as urged by defendants? I think so.

In the first place he designated the conveyance "Sale of Royalty."

In the second place the right retained by him to develop and operate the lands for oil and gas purposes under the terms of an 88 form of lease shows he intended the grantees to stand in the position of lessors, which would entitle them to a royalty of one-eighth free of cost in the pipe lines to which the wells would be connected, and he would stand in the position of a lessee, owning the working interest and receiving seven-eighths of the production and being liable for the expense of production.

In the third place it is plainly stated in the second paragraph that the grantees were to receive a "one-eighth royalty of all oil and gas."

And, finally, the very fact that the grantor retained all leasing privileges and all bonuses and rentals shows that he intended the interest conveyed to be a royalty interest as distinguished from a mineral interest. Where, as here, the royalty is defined, it is not necessary for the royalty owner to join in a lease and he is not entitled to share in the bonuses and rentals. Carroll v. Bowen, 180 Okla. 215, 68 P. 2d 773.

The difference between a mineral interest and a royalty interest is material. If, as the majority holds, the interest conveyed consists of a mineral interest and the two clauses are now ineffective for any purpose, then the grantees in the deed are tenants in common with the owner or owners of the remaining seven-eighths interest in the minerals and it will be necessary for the grantees and their assigns to either join in executing any lease or pay their share of the cost of the production of the oil and gas. Earp v. Mid-Continent Petroleum Corp., 167 Okla. 86, 27 P. 2d 855, 91 A.L.R. 188. On the other hand, if, as I believe, the intention was to convey to the grantees a royalty interest of one-eighth, then they need not join in oil and gas leases or pay any part of the cost of production, but their interest would be a net interest in the oil and gas produced.

3. Our statutes (15 O.S. 1941 §§151-177), which were in force when the deed was made and are still in force, establish the rules to be applied in interpreting contracts. A deed is but an executed contract, and these statutory rules apply equally to deeds. Lowery v. Westheimer, 58 Okla. 560, 160 P. 496; 18 C.J. 252; 16 Am. Jur. 528. These statutory rules enter into, and form a part of, contracts to the same extent as if they were expressly referred to or incorporated in their terms. 12 Am. Jur. 769; 17 C.J.S. 782. The grantor must be presumed to have been familiar with these rules of construction and to have had them in mind in framing the deed. And the grantees and their assigns were and are entitled to rely upon said rules of construction in contracting with reference to the lands

covered by the deed. The stability of titles and sanctity of contracts depend upon the enforcement of settled rules of construction in force at the time the deeds and contracts are made. Their meaning should not be left to the uncertain notions of courts whose personnel is ever changing.

In accordance with these statutory rules of construction, this court has held that in determining the meaning of deeds, our first and primary duty is to ascertain and give effect to the intention of the parties, particularly that of the grantor, and in doing so we are to look to the whole instrument from its four corners without undue preference to the granting clause or any other clause, each clause or word helping to explain the others, each clause, however, being subordinate to the general purpose and intent of the whole instrument, and that, where possible, effect should be given to every word and clause, and where, after giving effect to all other rules of construction, doubt remains, that doubt is to be resolved against the grantor, and in favor of the grantee. See Lowery v. Westheimer, 58 Okla. 560, 160 P. 496; Barnard v. West, 99 Okla. 127, 225 P. 977; Smart v. Bassler, 101 Okla. 39, 223 P. 352; Breidenthal v. Grooms, 161 Okla. 74, 17 P. 2d 688; Wilson v. Olsen, 167 Okla. 527, 30 P. 2d 710; Trumbla v. State, 191 Okla. 119, 126 P. 2d 1015; Hampton v. Kessler, 193 Okla. 619, 145 P. 2d 955. These authorities are in harmony with rules of construction generally prevailing in the other states. See 8 R.C.L. 1047-1052; 16 Am. Jur. 530-536; 18 C.J. 252-264; 26 C.J.S. 324-338.

It is true that, as argued by the appellee, there is a conflict between that part of the first paragraph following the description in which the grantor retained the right to lease said lands "upon such terms and conditions suitable to him" and the provision in the following clause that the grantees should "receive one-eighth royalty of all oil and gas." It is my view that these two provisions should be reconciled by holding that the last modified the first to the extent that the grantor could not lease the land for less than a royalty of one-eighth of the oil and gas, but that, in all other respects, he could lease the lands "upon such terms and conditions suitable to him," thereby giving some effect to each word and clause as required by 15 O.S. 1941 §157.

The granting clause, standing alone, would have made the grantor and the grantees tenants in common as to all minerals, but the second and third paragraphs modify or limit the granting clauses in three respects, (1) if Dillard or his successors operate the properties for oil or gas, they will do so under the conditions and provisions found in the 88 form of lease then in use, in which event they will pay the cost of operations and receive seven-eighths of the production, while the grantees will receive one-eighth of the production and will not be liable for any of the expense of developing the lands and producing the oil or gas, (2) the grantees are to receive one-eighth of the oil and gas, referred to as "royalty," whether produced by Dillard, his executors or assigns, and (3) Dillard, his successors and assigns, having the exclusive right to make mineral leases, will be entitled to all bonuses and delay rentals pertaining to all minerals.

As to all minerals, other than oil and gas, the granting clause is not modified by the subsequent clauses as to the quantum of interest conveyed, and as to those minerals Dillard and his grantees became tenants in common, with all the rights and obligations attending that relationship, except that Dillard reserved the exclusive right to manage, control and lease the lands for such purposes, which right carried with it all bonus and delay rental money that might accrue under any such lease, thus modifying the granting clause in those respects. The grantees, as tenants in common, would be entitled only to one-eighth of the *net* proceeds from the sale of any of such minerals. Earp v. Mid-Continent Petroleum Corpora-

tion, above; 40 A.L.R. 1400, annotation; 91 A.L.R. 205, annotation.

The third paragraph provides that the grantees shall receive *"one-eighth royalty of all oil and gas."* The plaintiff argues that this clause should be made to read "one-eighth *of the* royalty of all oil and gas" so as to prevent the conveyance from being unreasonable by giving the grantees all of the usual one-eighth royalty of the oil and gas, leaving no part of such usual one-eighth royalty to the grantor and his successors in title. While the provision may seem to us to be unreasonable, it may not have seemed so to Dillard. As above stated, this conveyance did not strip him of his property and leave him destitute. He was still wealthy and able to make liberal provisions for his widow, whom he later married, and all his children in his will executed in 1927, the will devising nearly 9,000 acres of land, and bequeathing nearly 1,000 head of cattle and large sums of money. The rights retained in this particular property were probably worth as much or more than the royalty interest conveyed. We cannot, therefore, say that the conveyance of the full one-eighth royalty interest made it unreasonable. Furthermore, sound rules of construction do not permit us to modify the contract by inserting words that change its meaning and thereby make a better contract than the grantor made. Federal Deposit Insurance Corp. v. Grim, 184 Okla. 275, 86 P. 2d 774; 26 C.J.S. 334. In 16 Am. Jur. at page 533 the correct rule is stated thus:

"In short, the court can neither put words into a deed which are not there nor put a construction on words directly contrary to the plain sense of them."

It follows that the rules established by our statutes and decisions for construing deeds can and should be applied, and all parts of the deed can and should be given some effect, as above outlined. If this were done, the granting clause would be given some effect, but would be limited by the two paragraphs. The clause defining the interest of the grantee as "one-eighth royalty interest" would be given effect. The clause giving the grantor the right to make leases "upon such terms suitable to him" would be given full effect except that the grantees would in all events be entitled to a full one-eighth royalty in the oil and gas produced. The "general intent and purpose of the whole contract," referred to in 15 O.S. 1941 §168, was that the grantees were to receive a full royalty interest of one-eighth, but the grantor retained full right to operate or lease the lands. None of the words are wholly inconsistent with the nature of the deed so as to justify their rejection, under 15 O.S. 1941 §169.

The result reached by the majority can be reached only by striking out of the conveyance the two original clauses that show the real intention of the grantor, which should control over the granting clause taken from a form (15 O.S. 1941 §167), thereby making over the contract in violation of the cited statutory rules of construction, which are but an enactment of the rules generally prevailing in the absence of statute. The effect of the decision is to take seven-eighths of the one-eighth royalty in some 4,000 acres of land from the grantees and their assigns and transfer it to the plaintiff as residuary devisee under the will of grantor. Under my view, the grantees and their assigns legally own the full 4,000 acres of oil and gas royalty, consisting of a net one-eighth of the oil and gas, while under the majority view they own but one-eighth, or 500 acres of such oil and gas royalty, and the widow the remaining seven-eighths, or 3,500 acres. This is on the assumption that the land will be developed by lessee, which is customary. If the parties develop the property, which is unlikely, the grantees and their assigns will be entitled to one-eighth, after deducting therefrom one-eighth of the expenses of prospecting for, developing and producing the oil and gas.

For the foregoing reasons, I respectfully dissent to the majority opinion.