Earl D. BONZO et al., Appellants,

v.

Arch NOWLIN et al., Appellees.

Court of Appeals of Kentucky.

Dec. 16, 1955.

Simeon S. Willis, Ashland, for appellant.

Wine & Venters, Baird & Hays, Pikeville, for appellee.

MOREMEN, Judge.

Esther Followay was the owner of the minerals in a tract of land in Pike County. The entire tract was under lease to Walter McGuffin.

On October 7, 1904, Esther Followay and her husband conveyed title to one half of their interest to D. T. Bonzo, together with this power contained in the deed:

"The said parties of the first part (Followay) also covenants to and with the said party of the second part (Bonzo) that in the event that Walter McGuffin and others shall in the future at any time fail in their covenants in the lease hereinbefore mentioned allow the said D. T. Bonzo, his heirs, executors, administrators or assigns, to lease the entire interest both of himself and the said Esther Followay and husband to whomsoever he may choose, upon the same terms contained in the lease to Walter McGuffin and others hereinbefore mentioned and shall join in such lease as he may negotiate."

The original parties to the deed of conveyance are no longer vested with the title to the property, but those who now own the respective interests are troubled by the problem the above language created.

This is the question: Was the right granted to D. T. Bonzo to lease the entire mineral rights a power coupled with an interest with the result that it was irrevocable and binding on the purchasers of the Followay moiety and may be exercised by owners by descent from D. T. Bonzo?

The circuit court concluded that the power granted was not an authority coupled with an interest, "but was a special authority allowed to D. T. Bonzo, but which did not terminate upon the death of the principal but did terminate upon the death of the agent." The court was of further opinion, (1) that since Bonzo did not have a vested interest in the Followays' moiety,

it was not a power coupled with an interest and (2) a covenant of such power over the half interest of Followays' interest, their successors and assigns, would constitute a perpetual power and would be an unreasonable restraint upon the rights of the parties now vested with that interest.

The question here involved has had little discussion in our opinions, and those cases—Moore v. Garred, 223 Ky. 20, 2 S.W.2d 1036; Richardson v. Lawson, 233 Ky. 73, 24 S.W.2d 923; and Thompson-Starret Co. v. Mason's Adm'rs, 304 Ky. 764, 201 S.W.2d 876—because of factual differences, are not compelling authority.

In the Moore case, the court accepted and quoted certain language from the opinion in Hunt v. Rousmanier, 8 Wheat 174, 205, 5 L.Ed. 589, which seems to be the fountainhead of authority on this point in our country. There Chief Justice Marshall defined the nature of situations which give rise to irrevocable agencies and designated various types of powers which are coupled with an interest, and the definitions have been generally accepted by the courts of this country. This opinion has been unfavorably criticized by leading scholars. See Mechem's Outlines of the Law of Agency, 4th Edition, page 269, and footnote where it is said:

"The Rousmanier case and the later authorities are acutely analyzed by Mr. Seavey in 'Termination by Death of Proprietary Powers of Attorney,' 31 Yale L.J. 283, Studies in Agency, 109. He remarks (at 287) that it 'is remarkable for the almost unanimous acceptance of its reasoning by the American courts and for the avoidance of its effects by many of them. It has become a tradition and, because of the great names associated with it, will always be cited. But it has had far more good fortune than it deserves. The authorities relied on were far from conclusive; it has curious inconsistencies; and the result reached was unfortunate both because justice was not done in the particular situation and because it has caused great confusion.'"

In a heavily annotated thesis, in 28 A.L.R. 2d 1230, it is clearly stated that such a power "is where as a part of the arrangement with his principal, the agent receives title to all or part of the subject matter of the agency, as distinguished from title to all or part of the proceeds of the agency."

We find cited three cases which held that where an agent by conveyance received a one half undivided interest in a mineral tract with the power to lease the entire tract, a power coupled with an interest was created and was therefore irrevocable. Jones v. Guy, Tex.Civ.App., 71 S.W.2d 913; Odstrcil v. McGlaun, Tex.Civ.App. 1950, 230 S.W.2d 353; Superior Oil Co. v. Stanolind Oil & Gas Co., Tex.Civ.App. 1950, 230 S.W.2d 346, affirmed, 150 Tex. 317, 240 S.W.2d 281.

We have no difficulty in this case in holding that the original agency between Followay and D. T. Bonzo was one coupled with an interest and, therefore, irrevocable. Our difficulty lies in the determination of whether the agency is terminated at the death of the agent and, therefore, cannot be exercised by people who subsequently are vested with the title. Strangely we have found no cases which deal with this particular problem. Most of the cases we have read do not deal with instruments which purport to grant a right not only to an agent but also to his heirs, administrators and assigns. The instrument with which we are dealing and which is above quoted uses these familiar words and we feel that we must accord them the significance to which they are entitled even though certain obtuse and ill defined theories of law, such as this question of power coupled with an interest, purport to offer solutions in cases where the granting authority is not specific. Still the theory does not carry with it a prohibition that parties may not, if they desire, grant a continuing power which may be assigned. In other words, we are not faced with an absolute rule as we are in cases which concern entailment of property

or offend against the specific rules concerning grants in perpetuity.

We have concluded, therefore, that when the grantors (the Followays) gave this right to "the said D. T. Bonzo, his heirs, executors, administrators or assigns," they intended that the power would extend to those people.

The question of whether it might extend to other than his direct heirs, his personal representative or his direct assigns, is not before us because the lease was executed at a time when D. T. Bonzo was living, under a power of attorney which he had given to Earl Bonzo.

We do not believe, as the trial court did, that the execution of this power constituted an unreasonable restraint on the right of alienation because the power does not restrain the alienation of the interest which was retained by the Followays and the fact that several conveyances of this interest occurred after the date of the original conveyance demonstrates that the Followays' remaining interest passed freely and without restraint.

We are not holding, as suggested by counsel for appellants that we should, that this is a covenant which runs with the land and would survive the first takers from D. T. Bonzo whether by inheritance, as personal representative or as assignee, because that question under the facts is not before us.

We have concluded that the execution of the lease was under proper authority.

Since we have found it necessary to reverse the judgment, upon return of the case to the circuit court, the appellees should be given an opportunity to try the issue as to whether or not the Loftis lease meets the stipulation that it is "upon the same terms contained in the lease to Walter McGuffin and others."

Judgment reversed for proceedings consistent with this opinion.