PAN AMERICAN PETROLEUM CORPO-
RATION et al., Appellants,

v.

H. L. CAIN, Appellee.

No. 6977.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 17, 1960.

Rehearing Denied Nov. 21, 1960.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Fulton, Hancock & McClain, Gilmer, Morehead, Sharp & Boyd, Plainview, William B. Neely, Midland, for appellants.

Klett, Evans, Trout & Jones, Lubbock, for appellee.

DENTON, Chief Justice.

This suit was brought by appellee, H. L. Cain, for recovery of title and possession of an undivided one-eighth interest in the oil and gas and other minerals in 160 acres of land situated in Yoakum County, Texas. The trial court granted a summary judgment awarding appellee title and possession of the undivided 20 acres of minerals in the Northeast ¼ of Section 640, Block D, John H. Gibson Survey, Yoakum County, Texas. The trial court further declared the oil and gas leases dated May 24, 1955 executed by the heirs of James Kiser, to be null and void and of no force and effect as they purported to include the interest

of Cain. All defendants in the trial court also filed motions for summary judgment. Upon the overruling of these motions and the granting of appellee's motion for summary judgment, all defendants duly perfected this appeal.

Prior to May, 1937, James Kiser owned the fee-simple title to both the surface and minerals of Section 640, Block D, referred to above. On May 17, 1937, Kiser executed a mineral deed to Mrs. Mae Johnston conveying an undivided ¼ of the minerals in the Northeast ¼ of Section 640. This mineral deed being duly recorded contained the following typewritten paragraph:

"It is also agreed and understood that the Grantor herein (Kiser) reserves the right to lease said land without the joinder of the grantee, he at all times using his best efforts to obtain the highest lease possible and shall never execute a lease wherein less than the regular one-eighth (⅛th) royalty is reserved. Grantee's part of the rentals on such lease to be deposited to his credit at the Bank designated as a depository under any such lease, until he shall have some other bank designated as a depository for his rentals."

In addition the deed contained several printed paragraphs, one of which read as follows:

"This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease heretofore executed and now of legal record; it being understood and agreed that said grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue thereunder from and after the date hereof, precisely as if the grantee herein had been at the date of the making of said lease the owner of a similar undivided

interest in and to the lands above described and none other and grantee one of the lessors herein."

At the time this mineral deed was executed the land in question was under a regular oil and gas lease to Herbert E. Clift who later assigned it to Skelly Oil Company. This lease held by Skelly Oil Company expired on December 24, 1937. On September 11, 1937, at a time when the Skelly Oil Company lease was in force and effect, Mrs. Mae Johnston executed a mineral deed to appellee H. L. Cain conveying an undivided ⅛ interest in the Northeast ¼ of Section 640. The deed from Mrs. Johnston to Cain contained the following provisions:

"Said land being now under an oil and gas lease executed in favor of Skelly Oil Co., it is understood and agreed that this sale is made subject to the terms of Said Lease and/or any other valid lease covering same, but covers and includes One Eighth of all of the oil royalty and gas rental or royalty due and to be paid under the terms of Said Lease, in so far as it covers the above described land."

On November 30, 1937, Cain executed a mineral deed to W. T. Halbert conveying an undivided ¹⁄₁₆th in the Northeast ¼ of Section 640 but on July 12, 1951, the widow of W. T. Halbert re-conveyed this same interest back to Cain. At the time of the trial Cain was therefore the owner of an undivided ⅛ interest in the minerals under the Northeast ¼ of Section 640.

On June 7, 1945, after the original Clift lease and a subsequent lease to D. P. Carter had expired, Kiser executed a 10-year oil and gas lease to John W. Murchison covering the whole of Section 640. This lease was later assigned by Murchison to one of the appellants, Leland Fikes. Kiser died intestate on February 19, 1948, and was survived by four daughters: Mabel Kiser Leach, wife of Earl Leach; Mary Kiser Jarman, wife of Clifford Jarman; Edith Kiser Moreland, wife of Lee C. Moreland;

and Ruth Kiser Franks, wife of Eldon Franks, who were all defendants below and appellants here. Prior to the termination of the June 7, 1945 lease these four daughters of James Kiser, joined by their husbands, executed individual identical leases to Leland Fikes on May 24, 1955, for a term of two years covering all of Section 640. None of the other mineral owners of Section 640, including Cain, joined in these leases, however all mineral owners except Cain subsequently ratified these leases.

Appellant Fikes, along with appellant Pan American Petroleum Corporation, an assignee of Fikes as to the South 80 acres of the Northeast ¼, claim under these leases of May 24, 1955, executed by the Kiser heirs. Prior to the termination of the primary term of these leases, drilling operations were begun by Pan American Petroleum Corporation and a producing oil well was subsequently completed. Fikes has since completed two producing oil wells on the North 80 acres of the quarter section in question. It is undisputed that the leases of May 24, 1955 are therefore still in force and effect by reason of the producing oil wells except as they may affect the interest of Cain.

From January, 1937 to the date of the trial it is also undisputed that James Kiser or his lawful heirs have owned an undivided interest in the minerals under Section 640. The record reveals that the Kiser heirs were the owners of an undivided 90 acres of minerals in the Northeast ¼ of Section 640 at the time of the trial.

Three separate briefs in addition to supplemental briefs have been submitted by the various appellants. Differently worded points of error are brought forward by the several appellants but their positions are substantially identical. We shall therefore discuss the general positions taken by all appellants in which they seek to uphold the validity of the leases of May 24, 1955.

■ As we understand the basic position of appellants, they are contending the pow-

er to lease reserved by James Kiser in the deed of May 17, 1937, to Mae Johnston was a power coupled with an interest, therefore such power was irrevocable and did not terminate with the death of James Kiser. Appellee concedes, and we think rightly so, that Kiser reserved a power that was coupled with an interest. We are of the opinion the law is well settled that a power coupled with an interest is a power accompanied by or connected with an interest in the property subject to the power. Superior Oil Co. v. Stanolind Oil & Gas Co., Tex.Civ.App., 230 S.W.2d 346, affirmed by Supreme Court in 150 Tex. 317, 240 S.W. 2d 281; Allison v. Smith, Tex.Civ.App., 278 S.W.2d 940; Jones v. Guy, Tex.Civ. App., 71 S.W.2d 913.

It is the contention of Cain that the power to lease reserved by Kiser terminated at his death, and that the leases executed by the Kiser heirs on May 24, 1955 are null and void and of no force and effect as to Cain's interest. Stated in another way, Cain contends the power to lease reserved did not pass by descent and distribution to the four daughters who are parties to this suit, maintaining that this was a personal right of James Kiser and can not be passed to his heirs by descent and distribution.

■ We think the law is well settled that when a power is coupled with an interest it can not be revoked by the grantor of the power. Superior Oil Co. v. Stanolind Oil & Gas Co. supra; Odstrcil v. Mc-Glaun, Tex.Civ.App., 230 S.W.2d 353; Bowles v. Bryan, Tex.Com.App., 247 S.W. 276, 2 Amer.Jur. 61, 2 C.J.S. Agency § 75, p. 1159. Cain became a grantor of the power to lease to Kiser by accepting the mineral deed from Mrs. Mae Johnston who had accepted the original deed from Kiser in which he retained the power here in question. However, Cain has made no effort by acts or otherwise to revoke the Kiser power. We therefore are not confronted with the question of whether or not Cain could have revoked this power reserved by Kiser. We think it is equally

well settled that a power coupled with an interest does not terminate with the death of the principal or grantor. Drake v. O'Brien, 99 W.Va. 582, 130 S.E. 276; Cano v. Cuellar, Tex.Civ.App., 95 S.W.2d 155, writ refused, 2 C.J.S. Agency § 86, p. 1178. We are also of the opinion this principle of law is not applicable here. We are concerned here with the effect of the death of Kiser, the agent and grantee of the power coupled with an interest.

The appellants are relying on Superior Oil Co. v. Stanolind Oil & Gas Co. supra, Allison v. Smith supra, and De Busk v. Cosden Petroleum Corp., Tex.Civ.App., 262 S.W.2d 767, among others, to support their contention that this power of Kiser coupled with an interest was irrevocable even by the death of Kiser. It is to be noted that in each of the cases cited by the appellant including those referred to above the instruments which conveyed this power used the term "heirs and assigns" in connection with the grantee's power to lease. No such words of inheritance are found in the clause granting this power to Kiser. Here the wording includes "Grantor herein reserves the right to lease * * * said land without the joinder of the grantee * * *." We think another significant phrase used in the Johnston deed is: "He (referring to Kiser) at all times using *his* best efforts to obtain the highest lease possible * * *."

■ All Texas cases cited which deal with this reservation of a power to lease include the words of inheritance "heirs or assigns." The clause in the deed before us did not specifically extend the power to lease to the heirs and assigns of Kiser. We are therefore of the opinion the wording of the mineral deed under consideration here distinguishes it from the instruments that were construed in the cases relied on by appellants. These cases establish a general rule that an agency or power of attorney when it is coupled with an interest is not revocable by the act, condition or death of the principal before the expiration of the interest. However, the Texas cases

applying this general rule did not involve the effect of that power by the death of the agent or holder of the power of attorney. We are concerned here with the effect of this power by the death of Kiser who was the agent and holder of a power of attorney to lease the mineral interest of Cain and the other mineral interest owners.

Are the words of inheritance "heirs and assigns" necessary to pass this leasing reservation of Kiser to his heirs? Appellants cite Article 1291, Vernon's Ann.Civ.St. and several cases thereunder including Rogers v. Nixon, Tex.Civ.App., 275 S.W.2d 197 and Word v. Kuykendall, Tex.Civ.App., 246 S.W. 757, for the position that the words of inheritance are not necessary in order for the right, title or interest to be inheritable or assigned. No oil and gas cases have been cited to support this view. We are of the opinion Art. 1291, V.A.C.S. and the cases there cited are not applicable here. This Statute has reference to the conveying of the fee simple estate. The power to lease retained by Kiser was not in itself an interest in land, but it was rather a power coupled with his interest in the minerals he owned.

No Texas case has been cited, neither have we found one, which deals with the particular question to be decided here. In Bonzo v. Nowlin, 285 S.W.2d 153, 154, the Kentucky Court of Appeals was confronted with the following worded conveyance. It read:

"The said party of the first part (Followay) * * * allow the said D. T. Bonzo, *his heirs, executors, administrators* or *assigns,* to lease the entire interest both of himself and the said Esther Followay and husband * * *."

After reviewing the authorities concerning the original agency between Followay and Bonzo and holding the power of Bonzo was a power coupled with an interest, the court concluded:

"We have concluded, therefore, that when the grantors (the Followays)

gave this right to 'the said D. T. Bonzo, his heirs, executors, administrators or assigns,' they intended that the power would extend to those people."

It seems clear that the court there gave meaning and significance to the words of inheritance found in that deed.

In an Oklahoma case, Howard v. Dillard, 198 Okl. 116, 176 P.2d 500, 502, the reservation clause in the "oil and royalty" deed read:

"He (grantor) shall have the sole and exclusive right to lease said lands to any person to whom he may choose * * *."

The grantor subsequently died and his heirs brought the suit to construe this "Sale of Royalty" executed by the deceased. The grantor died before exercising the right to execute an oil and gas lease. The Oklahoma court there used the following language:

"Under paragraphs 3 and 4 of the deed the grantor reserved unto himself the right to lease the lands involved on such terms as should be suitable to him and also the sole and exclusive right to develop for oil and gas and carry on other mining operations. These personal rights and privileges constitute rights in trust none of which were exercised by the grantor before his death and no trust relationship, coupled with an interest, came into existence. These reserved rights or privileges came to an end under the circumstances at the death of the grantor. See 41 Am. Jurs., p. 878, Sec. 100, and cases there cited in Note 6. These powers in trust did not run with the land.

"The situation might be otherwise if the grantor had, during his lifetime, leased or begun oil and gas exploration.

"This all being true the foregoing rights reserved by the grantor to himself personally was not inheritable or assignable and did not descend to his representative or heirs."

An interpretation of the Howard case was made by the same Oklahoma Supreme Court in Skelly Oil Co. v. Butner, 201 Okl. 372, 205 P.2d 1153, 1155, and used the following language:

"The holding there (referring to the Howard case) was not predicated upon the theory that the reservation of the right to lease the interest granted was of itself a power in trust and the case is not authority therefor. It was thought there that the reservation reflected merely a power personal to grantor concerning rights that were incident to the estate granted and thus negativing the existence in the grantor of any assignable right in the power."

After carefully considering the wording of the various reservation clauses and cases interpretating them, we come to the conclusion that the reasoning of the Howard case supra, the Skelly Oil Co. case supra, and the Bonzo case supra are controlling here rather than the line of cases relied upon by appellants. We are therefore of the opinion that the power to lease reserved by James Kiser, in the absence of the use of words of inheritance, terminated on his death and that this power which he reserved was a personal power and did not pass to his four daughters by descent and distribution. The leases executed by the heirs of James Kiser on May 24, 1955 are therefore null and void and of no force and effect as to appellee Cain's ⅛th interest in the Northeast ¼ of Section 640.

In other points of error appellants contend the irrevocable power coupled with an interest reserved by Kiser did not violate the rule against perpetuities. In view of our holding a discussion on this point becomes unnecessary. Other points raised by appellants become immaterial in light of our holding on the basic question involved here.

The judgment of the trial court is in all things affirmed.