PAN AMERICAN PETROLEUM CORPORATION ET AL, Petitioners
v.
H. L. CAIN, Respondent

No. A-8154. Decided January 17, 1962
Rehearing Denied March 28, 1962
355 S.W. 2d 506

SMITH, GRIFFIN, NORVELL and HAMILTON, JUSTICES, dissented.

*Turner, Rodgers, Winn, Scurlock & Terry,* Dallas, *L. A. Thompson,* Tulsa, Okla., *J. K. Smith,* Fort Worth, for Pan American Petroleum Corp.

*Morehead, Sharp & Boyd,* Plainview, for Mary Jarman et al.

*William B. Neely,* Midland, for William B. Neely, Trustee, et al.

*Fulton, Hancock & McClain,* Gilmer, for Leland Fikes.

*Klett, Evans, Trout & Jones,* Lubbock, for respondent.

JUSTICE WALKER delivered the opinion of the Court.

The controlling question presented by this appeal is whether the power to lease as reserved in a certain deed conveying an undivided mineral interest may be exercised by the heirs of the grantor after the latter's death. By deed dated May 17, 1937, James Kiser conveyed to Mrs. Mae Johnston an undivided one-fourth interest in the minerals in the Northeast Quarter of Section 640, Block D, John H. Gibson Surveys in Yoakum County. Although a printed form was used, the instrument contains the following typewritten paragraph:

> "It is also agreed and understood that the Grantor herein reserves the right to lease said land without the joinder of the grantee, he at all times using his best efforts to obtain the highest lease possible and shall never execute a lease wherein less than the regular one-eighth (1/8) royalty is reserved."

At the time this deed was executed Skelly Oil Company held an oil and gas lease on the land which expired by its own terms on December 24, 1937. While such lease was in force, Mrs. Mae Johnston conveyed an undivided one-eighth interest in the minerals to H. L. Cain, respondent. James Kiser died intestate on February 19, 1948, and was survived by four daughters who are his sole heirs. An additional undivided 90-acre interest in the minerals of the 160 acres, which was owned by James Kiser when he conveyed to Mrs. Mae Johnston, vested in such heirs upon his death and was owned by them when they executed four oil and gas leases on the land to Leland Fikes on May 24, 1955.

Petitioners are: (1) Pan American Petroleum Corporation

and Leland Fikes, the present owners of the four leases; (2) certain individuals who claim overruling royalties in part of the land; and (3) the four daughters of James Kiser. They contend that the four leases cover the undivided one-eighth mineral interest owned by respondent, while the latter insists that his interest in the minerals is not under lease. All parties moved for summary judgment in the trial court, and the motion of respondent was granted. The Court of Civil Appeals affirmed on the basis of its conclusion that the power to lease reserved by James Kiser terminated at his death. 340 S.W. 2d 93. We approve that holding and affirm the judgment of the Court of Civil Appeals.

The parties as well as the Court of Civil Appeals say that the power to lease, referred to by some writers as the executive right, reserved in the deed from James Kiser to Mrs. Mae Johnston is a power coupled with an interest. It has been so denominated by at least one other Texas court, Superior Oil Co. v. Stanolind Oil & Gas Co., Texas Civ. App., 230 S.W. 2d 346, (aff. 150 Texas 317, 240 S.W. 2d 281) ; Odstrcil v. McGlaun, Texas Civ. App., 230 S.W. 2d 353, (no writ) ; Allison v. Smith, Texas Civ. App., 278 S.W. 2d 940, wr. ref. n.r.e.; and there can be no doubt that an interest in land and a power with respect to another interest in the same land were vested in James Kiser. It is equally clear, however, that the interest owned by him was not so related to the power that the latter would, in other types of transactions, ordinarily be preserved after the death of the donor or principal. "[T]he interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing." Hunt v. Rousmanier's Adm'rs., 8 Wheat. 174, 5 L. Ed. 589. See also Daugherty v. Moon, 59 Texas 397. As pointed out by a number of eminent legal writers, the executive right reserved to the grantor in a conveyance of an undivided mineral fee interest is not a power coupled with an interest in that sense, because the grantor has no interest or estate in the subject or thing on which the power is to be exercised, i.e., the undivided mineral interest conveyed to the grantee. Walker, Developments in the Law of Oil and Gas in Texas During the War Years—A Resume, 25 Texas Law Rev. 1, 19; Jones, Problems Presented by the Separation of the Exclusive Leasing Power from the Ownership of Land, Minerals, or Royalty, Second Annual Institute on Oil and Gas Law and Taxation, 271. See also Meyers, The Effect of the Rule Against Perpetuities on Perpetual Non-Participating Royalty and Kindred Interests, 32 Texas Law Rev. 369, 395.

Mechem suggests that a new nomenclature is needed, because the one now used by the courts in this field is sadly ambiguous. He states that the interest of an agent in the execution of a power may be one of three kinds:

(1) "An interest, not in the thing concerning which the power is to be exercised, or in the results to flow from its exercise, but merely an interest in being permitted to exercise it in order to earn his commissions." This is a mere naked power, and is revocable at the will of the principal even though such revocation involves the breach of an agreement not to revoke it.

(2) "An interest, not amounting to a property or estate in the thing itself, but still an interest in the existence of the power or authority to act with reference to it, not for the purpose of earning a commission by the exercise of the power, but because the agent has parted with value, or incurred liability, or assumed obligations, at the principal's request or with his consent, looking to the exercise of the power as the means of reimbursement, indemnity or protection." Although this has been referred to by the courts as a power coupled with an interest and is not revocable by act of the principal, it is ordinarily deemed to be revoked by his death. For purposes of his classification, Mechem designates the same as a power given as security.

(3) "An interest or estate in the thing itself, concerning which the power is to be exercised, arising from an assignment, pledge or lien created by the principal, coupled with which is the power to deal with the thing itself in order to make the assignment, pledge or lien effectual." This is the orthodox power coupled with an interest which is generally held to be irrevocable by the act of the principal or by his death or disability. See Mechem, Law of Agency, 2nd ed. 1914, Vol. 1, Sec. 570, et seq., Sec. 588.

■ It is clear that James Kiser had more than a mere naked power. Although he owned no estate in the subject matter on which the executive right was to operate, the power was reserved to facilitate the leasing of his interest in the minerals. It was for the protection or security of such interest that he stipulated for the power. On the basis of Mechem's classification, such power might be regarded as one given by way of security but it is not coupled with an interest.

We do not mean to suggest that the death of one to whom an undivided mineral interest is conveyed will necessarily re-

voke the executive right reserved to the grantor in the conveyance. That question is not presented here, and it perhaps should not be held that a power given by way of security will always terminate at the principal's death. See Mechem, Law of Agency, 2nd ed. 1914, Vol. I, Sec. 653 et seq. The instrument involved in Drake v. O'Brien, 99 W. Va. 582, 130 S.E. 276, was said to create a power coupled with an interest which was, in effect, a grant or lease for mining purposes, and it was held that the power did not terminate at the death of Mary Gale, one of the grantors. See also Bonzo v. Nowlin, (Ky. 1955), 285 S.W. 2d 153. Moreover, as pointed out by Professor Meyers in his article cited above, it is well to recognize the strains produced by attempting to force modern commercial transactions into moulds that are hundreds of years old.

■ Our question is whether the reserved leasing power may be exercised by the heirs of the grantor after his death. Petitioners cite the decisions holding that a power coupled with an interest does not necessarily terminate with the death of the agent. Collins v. Hopkins, 7 Iowa 463; Scott v. Cain, 77 Ga. App. 826, 50 S.E. 2d 99; Todd v. Griffin, 55 Ind. App. 605, 104 N.E. 519; Lightner's Appeal, 82 Pa. St. 301; Boatmen's Bank v. Vandiver, Mo. App. 281 S.W. 144. In each of these cases the beneficiary or holder of the power owned an interest in the thing on which the power was to be exercised, and the courts were concerned only with whether the power should remain in existence for a relatively short period after the death of the holder in order that his estate or the beneficiary might have, recover or enforce such interest.

■ In our opinion the executive right terminates with the death of the original holder unless there is something to indicate that the parties intended that the power should survive and be exercised by others. This conclusion finds support in the reasoning and holdings of courts of other jurisdictions where the precise question has been considered. In Howard v. Dillard, 198 Okla. 116, 176 P. 2d 500, the instrument provided that the grantor "shall retain management and control of the minerals and privileges hereinbefore mentioned, and that he shall have the sole and exclusive right to lease said lands to any person to whom he may choose and upon such terms and conditions suitable to him * * *." It was held that the reserved leasing power was personal to the grantor and terminated at his death. A number of years later the same court considered a conveyance in which the reservation was in favor of the grantor, his heirs, executors, administrators and assigns. In support of its holding that the

power to lease might be exercised by the assignees of the grantor's heirs, the court pointed out that "the right was expressly reserved to the grantor, his heirs, executors, administrators and assigns as an exclusive right and a proper subject of ownership. An examination of the mineral deeds * * * show that he clearly expressed his intention to remain vested with the right to lease, and that he intended for this right to constitute a proper subject of ownership with a power of assignment." Stone v. Texoma Production Co., Okla., 336 P. 2d 1099. The expressed intention of the parties was made the basis of a similar holding in Bonzo v. Nowlin, supra.

So far as we have been able to determine, no court has adopted a different approach on the problem. In Drake v. O'Brien, supra, the question of whether the power there granted might be exercised by the personal representatives or assigns of the original parties does not appear to have been raised. We note, however, that the Restatement abolishes the distinction between powers coupled with an interest and powers given as security, and lays down the rule that a power given for security as there defined is not terminated by the death of the holder unless otherwise agreed by the parties. Restatement of the Law of Agency, Secs. 138, 139.

■ The question did not arise in the Superior Oil Company, Odstrcil and Allison cases, because the executive right was there expressly granted or reserved to the heirs and assigns of the original holder. Petitioners insist that the absence of the words "heirs and assigns" cannot be material because the reservation is governed by Article 1291, Vernon's Ann. Texas Civ. Stat. It is there provided that "[e]very estate in lands which shall thereafter [hereafter] be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law." We need not determine at this time whether the statute applies to reservations as well as grants, conveyances and devises, because it clearly deals only with estates in land. An estate in land is the degree, quantity, nature and extent *of interest* which a person has in real property. See Gibbs v. Lester, Comm. App., 41 S.W. 2d 28; 19 Am. Jur. Estates Sec. 2; 31 C. J. S. Estates Sec. 1. The statute can have no application, therefore, to a grant or reservation of something other than an interest in land.

We have already noted that the executive right reserved by James Kiser is not a power coupled with an interest, and it is equally clear that the power to lease is not in itself an interest in land. It does not entitle the holder, either presently or at any time in the future, to possession or use of, or any benefit arising from, the land or any part thereof. As pointed out by the Supreme Court of Pennsylvania, "a power is an authority given to dispose of real or personal property of which the donor has the right of disposition. It is not an estate in the property, and its scope and extent is governed by the instrument creating it." Hupp v. Union Coal and Coke Co., 284 Pa. 529, 131 Atl. 364. See also Pope v. Safe Deposit & Trust Co., 163 Md. 239, 161 Atl. 404, where the court observed that a power retained is not an estate in the subject matter of the power.

We agree with the Court of Civil Appeals that Article 1291 does not apply to the reservation in this case. Petitioners' further argument that Mrs. Mae Johnston and her assigns could never enjoy the executive right because the same was reserved by James Kiser assumes that the parties intended for the grantor, his heirs and assigns, to remain vested with the power to lease in perpetuity, and that is the question now presented for decision. It also seems clear to us that a grant or reservation of the executive right is not a covenant, running with the land or otherwise.

While the children of James Kiser may find it somewhat more difficult to lease their interest in the minerals if they do not also have power to lease respondent's interest, the enjoyment of their interest will not otherwise be affected by loss of the executive right. Subject only to the relative disadvantage of their position in the matter of leasing, they may take possession of, sell or lease such interest, drill for the production of minerals, and enjoy all of the benefits of ownership as fully and effectively as their father might have during his lifetime. This being so, we do not think that termination of the power works such a grave hardship or injustice as to require that the law perpetuate the same beyond the term agreed upon by the parties.

In the article cited above, Professor Meyers urges the adoption of some theory that will enable the courts to uphold the executive right. He points out that full utilization of mineral wealth occurs with exploration and development of the subsurface, and that full development is rendered more probable when the executive right remains in the hands of a single person. This argument has considerable force where the Rule against Perpetuities is

concerned, but it does not justify judicial revision of the terms of a conveyance. The rights of the party whose mineral interest is subject to a leasing power held by another must also be considered, and it is well to remember that the executive right, even if held to be perpetually separated from ownership of the interest over which it is to be exercised, will not necessarily remain in the hands of a single person.

The conveyance in the present case contains nothing to suggest that the parties intended for the executive right to be exercised by anyone other than James Kiser. No words of inheritance appear in the reservation, and it was provided that *he* would at all times use *his* best efforts to obtain the highest lease possible. This latter requirement could not be satisfied by the best efforts of another, whether heir at law, devisee, assignee or stranger. We agree with the Court of Civil Appeals that the power to lease terminated at the death of James Kiser, and it is unnecessary for us to consider the perpetuities question or the other points of error brought forward by petitioners.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 17, 1962.

SMITH, JUSTICE, dissenting.

I respectfully dissent. The Court agrees that Kiser reserved something more than a mere naked power. Then it narrows the question to whether this reserved leasing power may be exercised by the heirs of the grantor after his death. I contend that the reservation of power to lease contained in the deed from Kiser to Mrs. Johnston amounts in law to a property right which never at any time passed by the grant, and that when Kiser died, intestate, this interest in land passed by descent and distribution to his daughters. As I will more specifically discuss later, the Court seems to base its holding that the power reserved was personal to Kiser on the proposition that the reservation does not include the words "heirs and assigns".

Petitioner, Pan American, claims title under four separate but identical oil and gas leases, executed by the four daughters after the death of Kiser, covering the whole of Section 640. The four daughters received their interest in Section 640 under the laws of descent and distribution.

The Respondent, Cain, who holds title to 1/8 of the mineral

interest purchased by Mrs. Johnston, contends that the leases, having been executed by parties other than the original holder of the executive right, have no binding effect on his undivided 1/8 mineral interest. In other words, Cain claims that his mineral interest is not leased. The Court of Civil Appeals has held that the right to lease, unlimited as to time, reserved by Kiser, terminated upon his death and did not pass by descent and distribution to his heirs. The Court here, in holding that the power did not pass to the daughters, lays down the rule that the reserved executive right terminates with the death of the original holder unless there is *something to indicate that the parties intended that the power should survive and be exercised by others.*

Cain's contention is that there was a complete lack of power in the Kiser daughters to ever execute the leases: (a) because of the death of Kiser, and (b) because the reservation to Kiser violated the Rule against Perpetutities, and, also that the power was improperly exercised.

Pan American, et al., including the Kiser daughters, contend that the leases they executed were and are valid, and that their motions for summary judgment instead of Cain's motion for summary judgment should have been granted. I agree with Pan American. However, since the Court confines its opinion to the question of whether or not the power to lease terminated at the death of Kiser, I shall confine this dissent to that question, and shall not discuss all the reasons why I think the summary judgment should have been entered in favor of Pan American.

The executive right reserved by Kiser, in his deed to Mrs. Mae Johnston, to lease the fractional interest therein conveyed was a property right, an interest in land, appurtenant to the mineral interest therein conveyed, and for the use and benefit of the mineral interest retained and owned by Kiser, and as such passed on his death by descent to his heirs. This property right was expressly excepted from the grant. The executive right expressly reserved by Kiser never, at any time, vested in Mrs. Johnston for the simple reason that property excepted, or the estate reserved, is never included in the grant. Cockrell v. Texas Gulf Sulphur Co., 157 Texas 10, 299 S.W. 2d 672.

This Court, as well as the Court of Civil Appeals, apparently misinterpret the true contention of Pan American when it says that the executive right reserved by Kiser is a power "coupled with an interest". In my opinion, we have here a power "coupled with an interest" not in the sense discussed by these courts, but

in the sense that the power reserved was "engrafted on and was annexed" to the 1/4 undivided interest conveyed to Mrs. Johnston. The power was also "annexed" to the remaining 90-acre interest in the minerals which Kiser retained. In the case of Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed. 589, the Court speaks in terms of the power being "engrafted on the estate". The power "connected with" or "engrafted on" Mrs. Johnston's interest in the mineral estate, which was expressly excepted in the deed to Mrs. Johnston, remained annexed to Kiser's property interest upon his death, as well as the Johnston-Cain interest. Thus, the power and the interest were united in Kiser. The phrase "coupled with an interest" does not mean an interest in the exercise of the power. It means, in the sense used here, that Kiser retained an interest in the property on which the power was to operate. In the case of Drake v. O'Brien, 99 W. Va. 582, 130 S.E. 276, Sup. Ct. W. Va., 1925, it was held that "the power is to be construed liberally in favor of the object to be accomplished". Although in that case the complete executive rights were conveyed to the grantees, who had purchased only a one-half interest in the 1,000 acres of land involved, the principle is the same where, as here, all of the executive rights have been reserved by the grantor. In the Drake case the Court said: "* * * The language employed in the Gale deeds aptly fits this definition.[2] By the deed of June 26, 1875, there was conveyed to the grantees a one-half interest in 1,000 acres of land. Not only that, but the deed gave the power to take, operate, and control the entire tract as their own for the production of timber, coal, and salt, with power to lease the same in their own names as owners of the entirety. Thus, the grantee had an interest in every stick of timber, bushel of coal, and barrel of oil under the 1,000 acres." The Court, in holding that the power did not terminate with the death of the grantor, quoted from Perry on Trusts, Sec. 602h:

"It is a universal rule that a power coupled with an interest is irrevocable. * * * Not even the death or the insanity of the grantor or donor will annul or suspend its exercise. * * * In other words, the power is *annexed to the property,* and is an irrevocable part of the security, and goes with it." (Emphasis added.)

The Court also states:

"Where the power is coupled with an interest so that it

2. "By the phrase 'coupled with an interest' is not meant an interest in the exercise of the power, *but an interest in the property on which the power is to operate.*" (Emphasis added.)

may be exercised in the name and as the act of the donee of the power, the death of the person *who conferred the power* has no effect upon it." (Emphasis added.)

Although it is unnecessary to the decision, it could be plausibly argued that since the power was reserved by Kiser, he conferred the power upon himself. In other words, Kiser was actually *both* the donor and donee. In such a situation, the general rule announced in the Drake case, and many other cases, that the power does *not* terminate at the death of the donor-grantor, would certainly be applicable.

The majority opinion says: "Our question is whether the reserved leasing power may be exercised by the heirs of the grantor after his death." The Court's opinion indicates that its holding that Kiser's right to lease terminated upon his death, and, therefore, did not pass by descent and distribution to his heirs, is based largely on the fact that words of inheritance were not used in the language of the reservation. The Court holds that the executive right terminates with the death of the original holder unless there is *something to indicate that the parties intended that the power should survive and be exercised by others*. The Court then discusses the case of Stone v. Texoma Production Co., Okla. 336 P. 2d 1099. In that case the only "something to indicate that the parties intended that the power should survive and be exercised by others" is the fact that "the right was expressly reserved to the grantor, *his heirs, executors, administrators and assigns* as an exclusive right and a proper subject of ownership." (Emphasis added.) The reservation in the deed in the present case does not contain the underscored words "his heirs, executors, administrators and assigns". This is the only possible difference between the reservation in the Stone case and the present case. There is nothing about the Stone case which would lead to the conclusion that the Court based its holding on the fact that the reservation contained words of inheritance. It is clear, from the opinion, that the Court in the Stone case held that the right to lease was reserved to the grantor, and, therefore, the title to such right did not pass to the grantee. The Court further held that the reserved executive right was a proper subject of ownership, and that upon the death of the grantor the right to lease descended to his heirs and they became vested with a right to assign. It is clear to me that the words of inheritance contained in the Stone instrument did not control the Court's judgment, but rather the controlling factor was the rule that the executive right or interest reserved or excepted was a reserved property right which could never pass

to the grantee by reason of the deed containing the reservation or exception. It is well established that an interest or estate in land excepted from a grant is excluded from the grant and does not pass to the grantee. Pich v. Lankford, 157 Texas 335, 302 S.W. 2d 645; King v. First National Bank of Wichita Falls, 144 Texas 583, 192 S.W. 2d 260, 262, 163 A.L.R. 1128; Reynolds v. McMan Oil & Gas Co., Texas Comm. App., 11 S.W. 2d 778, motion for rehearing overruled, 14 S.W. 2d 819; 14 Texas Jur. 958, Deeds, Sec. 175.

The right to lease, having been reserved by the grantor Kiser in his deed, could not under any circumstances, by reason of such deed, ever become the property of the grantee, Mrs. Johnston, or her subsequent assignee, Cain.

The argument that the reservation did not expressly provide that the power was to extend to Kiser's "heirs and assigns" is of no force, especially in the light of Article 1291, Vernon's Annotated Civil Statutes of Texas.[3]

This statute has been construed to apply in the same way in cases involving reservations from grants. Word v. Kuykendall, Texas Civ. App., 246 S.W. 757, no wr. hist. The effect of this type of statute has been adequately stated in 26 C. J. S. 1001, Section 138, in this way:

"* * * Under a statute providing that a conveyance of realty shall be construed to be a conveyance in fee without the use of the word 'heirs', unless it appears from the language of the instrument that the grantor meant to convey an estate of less dignity, it is not necessary in order to constitute a reservation in fee that the reservation be limited to the heirs of the grantor."

The purpose of the statute would be thwarted if we were to hold at this late date that technical words of inheritance were necessary to secure to the heirs of the grantor the rights expressly reserved to the grantor.

The Court of Civil Appeals has held that Article 1291, supra, only has reference to the conveying of the fee simple estate. This Court has held that Article 1291, supra, applies to a mineral

---

3. "Every estate in lands which shall thereafter (hereafter) be granted, conveyed or devised to one although other words heretofore necessarily at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

estate. In the case of Mitchell v. Castellaw, 151 Texas 56, 246 S.W. 2d 163, this Court said:

"* * * It would seem to be the better rule that neither words of inheritance nor other words of art are essential to the valid reservation of an appurtenant easement of even unlimited duration. Restatement, supra, Sec. 468, comment b and Sec. 473, comment a; 28 C.J.S. supra. See also Word v. Kuykendall, supra. We are cited no Texas authority to the contrary. *Clearly such is the case with reference to an exception clause operating to sever the minerals from the surface.* Associated Oil Co. v. Hart, Texas Com. App., 277 S.W. 1043." (Emphasis added.)

It is significant that while no technical words of inheritance are included in the reservation involved here, there is likewise no mention in the reservation of any provision directing that the power to lease is to pass to Mrs. Johnston, her heirs and assigns, at the death of Kiser. The clear import of the statute is to require words of reversion in order that the right or interest may return to the party who would otherwise enjoy the same but for the grant or reservation rather than the common law's requirement that words of inheritance be included in the grant or reservation. Rogers v. Nixon, Texas Civ. App., 275 S.W. 2d 197, wr. ref. Even the states that recognize and follow the common law rule, requiring words of inheritance in order for a reservation to vest in the heirs of the grantor, recognize that the same is not necessary after the passage of a statute such as Article 1291, supra.

The judgments of both the trial court and the Court of Civil Appeals should be reversed, and the motion of Pan American, et al. for summary judgment should be granted.

ASSOCIATE JUSTICES GRIFFIN, NORVELL and HAMILTON join in this dissent.

Opinion delivered January 17, 1962.